[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-10711

_____

D.C. Docket No. 1:17-cr-20524-DMM-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

FERNANDO SANCHEZ, JR.,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(October 2, 2019)

Before ROSENBAUM, GRANT and HULL, Circuit Judges.

HULL, Circuit Judge:

After pleading guilty, defendant Fernando Sanchez, Jr., appeals his sentence

for one count of being a convicted felon in possession of a firearm, in violation of

18 U.S.C. § 922(g)(1). At sentencing, the district court imposed the mandatory minimum fifteen-year sentence under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)(1), (e)(2)(B)(i). On appeal, Sanchez argues that: (1) he did not qualify as an armed career criminal under the ACCA because he did not have three qualifying prior convictions; and (2) in any event, the district court plainly erred in imposing the ACCA's mandatory minimum sentence because he was convicted of only one § 922(g) count. After review, we affirm.

## I. FACTUAL BACKGROUND

### A. Guilty Plea

On June 19, 2017, Sanchez, a convicted felon, sold a loaded rifle to a confidential informant working with law enforcement. Subsequently, on June 28, 2017, Sanchez sold the same confidential informant two semiautomatic firearms and 278 rounds of ammunition. Audio and video recordings captured both of these firearm transactions.

A grand jury indicted Sanchez on two counts of possession of a firearm and ammunition by a convicted felon, in violation of § 922(g)(1). Pursuant to a written plea agreement, Sanchez pled guilty to one firearm count, and the government dropped the other firearm count.

**B.     Presentence Investigation Report**

The Presentence Investigation Report ("PSI") initially calculated an adjusted offense level of 22 under U.S.S.G. § 2K2.1.  The PSI reported that Sanchez had these five prior convictions: (1) a 1991 New York conviction for first-degree robbery; (2) 1993 New York convictions for attempted murder and assault with intent; (3) 2002 federal convictions for conspiracy to commit armed carjacking, aiding and abetting attempted armed carjacking, using and carrying a firearm during and in relation to a crime of violence, and felon in possession of a firearm; (4) a 2017 Florida conviction for resisting an officer without violence; and (5) a 2017 Florida conviction for tampering with physical evidence.

The PSI increased Sanchez's offense level from 22 to 33, under U.S.S.G. § 4B1.4(b)(3)(B), because it concluded Sanchez was an armed career criminal under the ACCA.  The PSI identified Sanchez's first three prior convictions listed above as the qualifying ACCA predicate felony convictions.  The PSI reduced Sanchez's offense level by 3, pursuant to U.S.S.G. § 3E1.1(a) and (b), because he accepted responsibility for his offense, for a total offense level of 30.

The PSI calculated a criminal history category of III based on six criminal history points.  The PSI increased Sanchez's criminal history category to IV, pursuant to U.S.S.G. § 4B1.4(c)(3), due to Sanchez's status as an armed career criminal.  With a total offense level of 30 and a criminal history category of IV,

3

Sanchez's initial advisory guidelines range was 135 to 168 months' imprisonment. However, because the statutory minimum sentence of 15 years under the ACCA was greater than the high end of the range, the PSI determined that Sanchez's advisory guidelines sentence was 180 months.  See U.S.S.G. § 5G1.1(b) (providing that when the mandatory minimum sentence is greater than the advisory guidelines range, it becomes the guidelines sentence).

Sanchez objected to the PSI's designation of him as an armed career criminal under the ACCA and the Sentencing Guidelines.  Relevant to this appeal, Sanchez argued that neither of his prior New York convictions qualified as violent felonies because they did not have as an element the use, attempted use, or threatened use of violent force, as required by Johnson v. United States, 559 U.S. 133, 130 S. Ct. 1265 (2010) ("Curtis Johnson").

In response, the government argued that both of Sanchez's New York convictions categorically qualified as violent felonies under the ACCA's elements clause.  The government also submitted certificates of disposition for each conviction.  These documents showed that Sanchez was convicted of New York first-degree robbery under New York Penal Law § 160.15(4) and New York attempted second-degree murder under New York Penal Law §§ 110 and

125.25(1). Sanchez has never disputed that he has these two New York convictions.[1]

## C.    Sentencing

At sentencing, the district court stated that Sanchez's prior convictions were "prototypical violent crimes" and qualified as ACCA predicates.  Overruling Sanchez's objection, the district court adopted the PSI's findings and stated that the advisory guidelines range was 180 months.  After hearing from Sanchez and considering the 18 U.S.C. § 3553(a) sentencing factors, the district court imposed a 180-month sentence.  Afterward, Sanchez renewed his objection to the district court's ACCA determination.

## II.  DISCUSSION

Under the ACCA, a defendant convicted of an offense under 18 U.S.C. § 922(g) is subjected to an increased mandatory minimum prison sentence if he has three prior felony convictions for a "violent felony" or a "serious drug offense." 18 U.S.C. § 924(e)(1).  Here, Sanchez argues that his New York convictions for first-degree robbery and attempted second-degree murder do not qualify as violent felonies under the ACCA.

---

[1]In the district court, Sanchez also challenged whether his federal convictions—for aiding and abetting attempted armed carjacking and conspiring to commit armed carjacking—qualified as violent felonies. Because Sanchez does not raise that issue on appeal, we do not address it further.

The ACCA defines "violent felony," inter alia, as any offense punishable by a term of imprisonment exceeding one year that "has as an element the use, attempted use, or threatened use of physical force against the person of another." 18 U.S.C. § 924(e)(2)(B)(i).  Sanchez's appeal concerns only this elements clause.[2]

We apply the categorical approach to determine whether a prior conviction qualifies under the ACCA's elements clause.  United States v. Hill, 799 F.3d 1318, 1322 (11th Cir. 2015).  Under the categorical approach, we look only to the fact of conviction and the statutory definition of the prior offense.  Id.  "A crime is categorically a violent felony under the elements clause if even the least culpable conduct criminalized by the statute would fall within the ACCA definition." United States v. Jones, 906 F.3d 1325, 1328 (11th Cir. 2018), cert. denied, 139 S. Ct. 1202 (2019) (quotation marks omitted).

## A.    Physical Force Requirement of the ACCA's Elements Clause

Recently, the Supreme Court has thrice addressed the definition of "physical force" for purposes of similarly worded elements clauses.  See Curtis Johnson, 559 U.S. at 138-40, 130 S. Ct. at 1270-71 (ACCA's elements clause); United States v. Castleman, 572 U.S. 157, 168-71, 134 S. Ct. 1405, 1413-15 (2014) (18 U.S.C. § 921(c)(33)(A)(ii)'s elements clause); Stokeling v. United States, 586 U.S. __, __,

---

[2]We review de novo whether a prior conviction constitutes a "violent felony" under the ACCA.  United States v. Deshazior, 882 F.3d 1352, 1354 (11th Cir. 2018), cert. denied, 139 S. Ct. 1255 (2019).

139 S. Ct. 544, 550, 552, 553-55 (2019) (ACCA's elements clause). Taken together, the Supreme Court in these cases has told us that "physical force" in the elements clause means: (1) an act that is physical, meaning that it must be "exerted by and through concrete bodies," not "intellectual or emotional force" and (2) a physical act that is directly or indirectly "capable of causing physical pain and injury." Stokeling, 586 U.S. at ___, 139 S. Ct. at 552; Castleman, 572 U.S. at 163 n.2, 134 S. Ct. at 1410 n.2; Curtis Johnson, 559 U.S. at 138, 130 S. Ct. at 1270. "Capable," in turn, means that the force "potentially" will cause physical pain or injury. Stokeling, 586 U.S. at ___, 139 S. Ct. at 554. Even before Stokeling, this was our Court's binding precedent as to the force element under the ACCA. See Jones, 906 F.3d at 1328-29 (ACCA); Hylor v. United States, 896 F.3d 1219, 1222-23 (11th Cir. 2018) (ACCA); United States v. Deshazior, 882 F.3d 1352, 1357-58 (11th Cir. 2018), cert. denied, 139 S. Ct. 1255 (2019) (ACCA); United States v. Vail-Bailon, 868 F.3d 1293, 1301-02 (11th Cir. 2017) (en banc), cert. denied, 138 S. Ct. 2620 (2018) (Sentencing Guidelines).

We now turn to Sanchez's two New York convictions to determine whether each categorically involved the use, attempted use, or threatened use of such physical force.

**B.    New York First-Degree Robbery**

New York's statutory scheme contains three degrees of robbery determined by the presence of certain aggravating factors.  See N.Y. Penal Law §§ 160.00-160.15; Stuckey v. United States, 878 F.3d 62, 70 (2d Cir. 2017), cert. denied, 139 S. Ct. 161 (2018).  All three degrees of robbery, however, require the defendant to "forcibly steal[ ]" property.  See N.Y. Penal Law §§ 160.05 (third-degree robbery), 160.10 (second-degree robbery), 160.15 (first-degree robbery).  In other words, the "core crime" of New York robbery, regardless of the degree, is defined as "forcibly steal[ing]" property.  People v. Miller, 87 N.Y.2d 211, 214, 661 N.E.2d 1358, 1360 (N.Y. 1995).

New York law defines the core crime of forcibly stealing as follows:

A person forcibly steals property and commits robbery when, in the course of committing a larceny, he uses or threatens the immediate use of physical force upon another person for the purpose of:

1. Preventing or overcoming resistance to the taking of the property or to the retention thereof immediately after the taking; or

2. Compelling the owner of such property or another person to deliver up the property or to engage in other conduct which aids in the commission of the larceny.

N.Y. Penal Law § 160.00.  The New York Court of Appeals, the highest court in the state, has stated that forcible stealing as defined by § 160.00 does not include "sudden or stealthy seizure or snatching," which instead qualifies as the misdemeanor crime of "jostling" or pickpocketing under New York Penal Law

8

§ 165.25. People v. Jurgins, 26 N.Y.3d 607, 614-15, 46 N.E.3d 1048, 1053 (N.Y. 2015).

Here, Sanchez was convicted of first-degree robbery under New York Penal Law § 160.15(4).[3] Under New York law, a person commits first-degree robbery "when he forcibly steals property" and "in the course of the commission of the crime or of immediate flight therefrom, he or another participant in the crime" commits one of four aggravating acts, as follows:

> 1. Causes serious physical injury to any person who is not a participant in the crime; or
>
> 2. Is armed with a deadly weapon; or
>
> 3. Uses or threatens the immediate use of a dangerous instrument; or
>
> 4. Displays what appears to be a pistol, revolver, rifle, shotgun, machine gun or other firearm . . . .

N.Y. Penal Law § 160.15 (emphasis added). The intent element for all degrees of New York robbery is the same—the intent to permanently deprive the owner of the property. Miller, 87 N.Y.2d at 217, 661 N.E.2d at 1362.

---

[3]The parties agree that Sanchez's first-degree robbery conviction was under § 160.15(4). Although Sanchez contends otherwise, the certificates of disposition for his New York convictions are in the record and were before the district court at sentencing. In fact, the government attached them to its response to Sanchez's objections to the PSI, which is in the record.

For the first time on appeal, Sanchez claims that his conviction was only for aiding and abetting first-degree robbery. However, nothing in the certificate of disposition supports that claim. The certificate of disposition, to which Sanchez did not object at sentencing, cites only the substantive robbery statute, § 160.15(4), and not New York's accessory liability statute, New York Penal Law § 20.00.

Here, we readily conclude that New York first degree robbery, which requires the defendant to "forcibly steal"—that is, to "use[ ] or threaten[ ] the immediate use of physical force upon" the victim during the larceny—has as an element the use, attempted use, or threatened use of "physical force" within the meaning of the ACCA's elements clause. See N.Y. Penal Law § 160.00. Indeed, New York's definition of forcible stealing largely tracks the language of the ACCA's elements clause and adopts the common law understanding of robbery by requiring enough force to either overcome the victim's resistance or compel the victim to deliver up the property. See N.Y. Penal Law § 160.00(1)-(2); Jurgins, 26 N.Y.3d at 614-15, 46 N.E.3d at 1053; see also Stokeling, 586 U.S. at ___, 139 S. Ct. at 555 (explaining that the term "physical force" in the ACCA's elements clause "encompasses the degree of force necessary to commit common-law robbery," which includes "the amount of force necessary to overcome the victim's resistance"). Forcible stealing does not include larcenies involving only slight touching, such as a sudden or stealthy snatching or pickpocketing, which fall under the separate offense of "jostling" under New York Penal Law § 165.25. See Jurgins, 26 N.Y.3d at 614, 46 N.E.3d at 1053; see also People v. Cherry, 374 N.Y.S.2d 312, 313 (N.Y App. Div. 1975) (holding that trial court "improperly advised" the jury "that mere 'touching' of the victim was the equivalent of physical force"). Thus, New York robbery requires "'force capable of causing physical

pain or injury.'"  See Stokeling, 586 U.S. at ___, 139 S. Ct. at 554 (quoting Curtis Johnson, 599 U.S. at 140, 130 S. Ct. at 1265).

Stokeling forecloses Sanchez's argument that a person can commit New York first-degree robbery under § 160.15(4) without the "violent force" required by Curtis Johnson merely by blocking the victim or grabbing and tugging on victim.  The Supreme Court in Stokeling rejected a substantially similar argument as to Florida's robbery statute, concluding that "the force necessary to overcome a victim's physical resistance," that is required by Florida law, "is inherently 'violent' in the sense contemplated by Johnson" and that "it is the physical contest between the criminal and the victim that is itself capable of causing physical pain or injury."  Stokeling, 586 U.S. at ___, 139 S. Ct. at 553 (quotation marks omitted).[4]

Notably, since Stokeling, the Second Circuit has concluded that all degrees of New York robbery satisfy the "violent force" requirement because they all require "forcible stealing."  See, e.g., United States v. Thrower, 914 F.3d 770, 774-776 (2d Cir. 2019), petition for cert. filed, (U.S. July 1, 2019) (No. 19-5024) ("We

---

[4]The majority in Stokeling also rejected Stokeling's argument, echoed by the dissenters in that case, that "physical force," as defined by the Curtis Johnson Court, meant a "strong," "substantial" or "heightened" degree of force.  See Stokeling, 586 U.S. at __, 139 S. Ct. at 553 (rejecting Stokeling's argument that Curtis Johnson held that physical force means "substantial force" or force that is "severe," "extreme," "furious," or "vehement"); id. at __, 139 S. Ct. at 557-58 (Sotomayor, J., dissenting) (arguing that Curtis Johnson interpreted "physical force" to mean a "strong" or "substantial degree of force").

therefore conclude that the New York offense of robbery in the third degree, which like every degree of robbery in New York requires the common law element of 'forcible stealing,' is a 'violent felony' under ACCA.  By extension, New York robbery in the first degree is also a 'violent felony' under ACCA."); see also United States v. Moore, 916 F.3d 231, 239-42 (2d Cir. 2019) (concluding New York third-degree robbery qualifies as a crime of violence under U.S.S.G. § 4B1.2(a)(1)'s identical elements clause).

Likewise, the Fourth Circuit has concluded that all degrees of New York robbery "necessarily involve[ ] the 'use, attempted use, or threatened use of physical force against the person of another.'"  United States v. Hammond, 912 F.3d 658, 660 (4th Cir. 2019), petition for cert. filed, (U.S. May 17, 2019) (No. 18-9330) (quoting U.S.S.G. § 4B1.2(a)(1)'s elements clause).  We agree with the Second and Fourth Circuits that the "forcible stealing" element of New York's statutory scheme for robbery offenses requires the use, attempted use, or threatened use of "physical force," as that term is defined by the Supreme Court in Curtis Johnson and Stokeling together.  Thus, Sanchez's first-degree robbery conviction qualifies as a "violent felony" under the ACCA.[5]

---

[5]Even before Stokeling, the Second, Sixth, and Eighth Circuits had concluded that New York's definition of "forcibly steals" in § 160.00 has as an element the use, attempted use, or threatened use of physical force.  See United States v. Pereira-Gomez, 903 F.3d 155, 164-66 (2d Cir. 2018), cert. denied, 139 S. Ct. 1600 (2019) (concluding New York second-degree robbery qualifies as a crime of violence under the identical elements clause in U.S.S.G. § 2L1.2

12

We also reject Sanchez's argument that New York first-degree robbery does not qualify as a violent felony because a defendant can be convicted under § 160.15 even though he is unaware of his accomplice's commission of one of the aggravating factors.  Under § 160.15, a defendant is not guilty of robbery unless he "forcibly steals," and intended to forcibly steal, the victim's property.  See Miller, 87 N.Y.2d at 217, 661 N.E.2d at 1362.  It is true the aggravating factors in § 160.15 may be committed by the defendant or his co-participant.  See N.Y. Penal Law § 160.15.  Nonetheless, the fact remains that, as to the first element, the defendant himself must have forcibly stolen and intended to "forcibly steal," which is to say that the defendant must have intended to use or threaten physical force to take the victim's property.  See id.  Thus, § 160.15 does not criminalize accidental or negligent use of force.  Cf. Leocal v. Ashcroft, 543 U.S. 1, 9, 125 S. Ct. 377, 382 (2004); see also Stuckey, 878 F.3d at 71 (concluding that § 160.15(4) satisfies the intent requirement of Leocal and explaining that a defendant convicted under § 160.15 must "actively and intentionally engage in the commission of the robbery—precisely what Leocal requires"); Lassend v. United States, 898 F.3d 115, 133 (1st Cir. 2018), cert. denied, 139 S. Ct. 1300 (2019) (agreeing with

n.1(B)(iii) (2014)); United States v. Williams, 899 F.3d 659, 663 (8th Cir. 2018) (concluding New York second-degree robbery qualifies as a crime of violence under the elements clause in U.S.S.G. § 4B1.2(a)(1)); Perez v. United States, 885 F.3d 984, 989-91 (6th Cir. 2018), cert. denied, 139 S. Ct. 1259 (2019) (concluding New York second-degree robbery qualifies under the ACCA's elements clause).

Stuckey and further explaining that "[i]f Congress had desired to preclude convictions from qualifying as ACCA predicates where the defendant acted as an accomplice and did not intend the principal's use of force, it would have done so clearly").

## C.    New York Second Degree Murder

Sanchez argues that his prior conviction for attempted second-degree murder does not qualify under the ACCA's elements clause because, under New York law, second-degree murder can be committed without any use of physical force. We disagree.

Unlike with robbery, New York's second-degree murder statute lists elements in the alternative such that it defines multiple crimes, so we must conduct a review of the specific conviction statute. We review that statute categorically, unless it is divisible and sets out multiple crimes. See Mathis v. United States, 579 U.S. __, __, 136 S. Ct. 2243, 2249 (2016). If that is the case, we apply the "modified" categorical approach by determining "which crime in the statute formed the basis of the defendant's conviction" and reviewing that crime categorically. United States v. Gundy, 842 F.3d 1156, 1162 (11th Cir. 2016), cert. denied, 138 S. Ct. 66 (2017).

Section 125.25 is divisible on its face. See Mathis, 579 U.S. at __, 136 S. Ct. at 2256. It has five subsections, and each codifies a different way to commit

second-degree murder.  The subsections are not simply different means of committing the same crime; they each require different elements.  For example, §§ 125.25(1) and (5) criminalize intentional conduct, whereas §§ 125.25(2) and (4) criminalize reckless conduct.  And § 125.25(1) lacks the affirmative defenses available in § 125.25(3).

New York case law reinforces this conclusion.  See Mathis, 579 U.S. at __, 136 S. Ct. at 2256; People v. Williams, 154 A.D.3d 1290, 1291 (N.Y. App. Div. 2017) (observing that § 125.25(1) has an "element of 'intent to cause the death of another'" and that § 125.25(3) has "the element of causing the death of another during an 'attempt[ ] to commit robbery'").[6]

Ordinarily, the next step of our analysis would be to determine the subsection that Sanchez was convicted under.  See Gundy, 842 F.3d at 1162.  But here the parties agree that Sanchez was convicted for violating § 125.25(1).  Accordingly, we apply the categorical approach to that subsection.

Under New York law, a person commits second-degree murder in violation of § 125.25(1) when, "[w]ith intent to cause the death of another person, he causes the death of such person or of a third person."  N.Y. Penal Law § 125.25(1)

---

[6]We look to decisions from a state's highest court in interpreting state law, including the elements of the offense.  See United States v. Hill, 799 F.3d 1318, 1322 (11th Cir. 2015).  Where the state's highest court has been silent on the issue, we follow decisions from the state's intermediate appellate courts, "unless there is some persuasive indication that the highest court of the state would decide the issue differently."  Id. (quotation marks omitted).

(emphasis added).  In other words, a defendant cannot be convicted of second-degree murder in New York without actually and intentionally causing a person's death.

In a different statutory context, the Supreme Court has made clear that "the knowing or intentional causation of bodily injury necessarily involves the use of physical force," because "[i]t is impossible to cause bodily injury without applying force in the common-law sense."  Castleman, 572 U.S. at 169-170, 134 S. Ct. at 1414 (2014).  This Court's elements-clause cases invoke a similar principle: "intentional force—even of the touching variety—that in fact causes 'great bodily harm, permanent disability, or permanent disfigurement' . . . necessarily constitutes force that is capable of causing pain or injury."  Vail-Bailon, 868 F.3d at 1303-04 (analyzing Sentencing Guideline's elements clause).  Likewise, the knowing and intentional causation of death also necessarily involves the use of physical force because it is impossible to cause death without applying force that is capable of causing pain or physical injury.  Therefore, New York's second-degree murder statute, which requires the intentional causation of death, categorically requires the use of physical force.

Further, we reject Sanchez's argument that New York second-degree murder does not require the use of physical force because it can be committed by poisoning.  This argument is squarely foreclosed by our binding precedent.  This

16

Court has made clear that the term "physical force" in the ACCA's elements clause encompasses both direct and indirect applications of physical force, including the use of poison, to cause pain or physical injury.  See Deshazior, 882 F.3d at 1357-58 (citing Castleman, 572 U.S. at 170-71, 134 S. Ct. at 1415).  This is so because even with indirect applications of force, "the actor knowingly employs a device to indirectly cause physical harm—from a bullet, a dog bite, or a chemical reaction." Id. at 1358.  Applying this reasoning, this Court has specifically rejected arguments about poisoning, like the one Sanchez makes here, to conclude that other state murder convictions qualify as violent felonies under the elements clause.  See Jones, 906 F.3d at 1328-29 (Florida second-degree murder); Hylor, 896 F.3d at 1222-23 (Florida first-degree murder).[7]

We also reject Sanchez's contention that New York second-degree murder does not require the use or threat of physical force because it can be committed by omission, such as when a parent intentionally withholds food or refuses to seek medical care for a child and thereby causes the death of the child.  To begin, we note that the Supreme Court has been clear that the "meaning of 'physical force' in § 924(e)(2)(B)(i) is a question of federal law, not state law."  Curtis Johnson, 559

---

[7]We decline to address Sanchez's argument, raised for the first time in his reply brief and discussed only briefly, that his New York conviction under § 125.25(1) does not qualify under the ACCA's elements clause because it was for attempted, rather than completed, second-degree murder.  See United States v. Britt, 437 F.3d 1103, 1104 (11th Cir. 2006).

17

U.S. at 1138, 130 S. Ct. at 1269.  Nonetheless, it is instructive to point out that Sanchez is wrong even with respect to New York law.  In this regard, we recognize that New York law imposes criminal liability for conduct that includes both voluntary acts and omissions where there is a duty to act.  N.Y. Penal Law §§ 15.00(3), 15.10.  But notably, New York law also defines "[c]onduct" to include both "an act or omission and its accompanying mental state," and "[t]o act," to include both "perform[ing] an act or omit[ting] to perform an act."  Id. §15.00(4)-(5).  Thus, under New York law, failing to act where there is a duty to act is an act or conduct itself.  So, for purposes of § 125.25(1), a defendant could intentionally cause the death of a person not only by direct force but also by the act of intentionally not providing medical care or food given the parent's duty to act.  Accordingly, a parent's intentional withholding of needed medical treatment or food with the intent to cause his or her child's death and in fact causing the child's death constitutes the use of physical force as the Supreme Court has defined it.  This is so because, as with poisoning, the intentional causation of bodily injury or death, even by indirect means such as withholding medical treatment or food, necessarily involves the use of physical force.  See Castleman, 572 U.S. at 169-70, 134 S. Ct. at 1414; Jones, 906 F.3d at 1328-29; Hylor, 896 F.3d at 1223; Deshazior, 882 F.3d at 1357-58.

Indeed, in Castleman, the Supreme Court held that:

18

> The "use of force" in Castleman's example is not the act of "sprinkl[ing]" the poison; it is the act of employing poison knowingly as a device to cause physical harm. That the harm occurs indirectly, rather than directly (as with a kick or punch), does not matter.

Castleman, 572 U.S. at 171, 134 S. Ct. at 1415 (alteration in original).  The Supreme Court further explained that "'physical force' is simply 'force exerted by and through concrete bodies'" and that it was "impossible to cause bodily injury without applying force in the common-law sense."  Id. at 170, 134 S. Ct. at 1414-15.

We therefore join three other circuits that have concluded, based on Castleman, that intentionally withholding food or medicine with the intent to cause bodily injury or death constitutes a use of force under the elements clause.  See United States v. Waters, 823 F.3d 1062, 1064, 1066 (7th Cir. 2016) ("[P]roving intentional causation of bodily harm 'unambiguously requires proving physical force'"); United States v. Ontiveros, 875 F.3d 533, 538 (10th Cir. 2017) (concluding that the example of a son's Colorado second-degree assault conviction for neglecting to care for his father requires a use of force);  United States v. Peeples, 879 F.3d 282, 287 (8th Cir. 2018).  And we endorse the Eighth Circuit's reasoning in Peeples on this point:

> In the example of a care-giver refusing to feed a dependent, it is the act of withholding food with the intent to cause the dependent to starve to death that constitutes the use of force.  It does not matter that the harm occurs indirectly as a result of malnutrition.  Because it is impossible to

19

cause bodily injury without force, it would also be impossible to cause death without force.

879 F.3d at 287 (citations omitted).

Under our precedent and the logic of Castleman, we see no reason to draw a distinction between administering a poisonous substance with the intent to cause death and withholding a life-saving substance with the intent to cause death, where both must in fact cause death to be prosecuted under § 125.25(1).[8]

## D.    Fifteen-Year Mandatory Minimum Sentence

For the first time on appeal, Sanchez argues that even if he has the requisite number of violent felony convictions, he still is not subject to the ACCA's mandatory minimum fifteen-year sentence.  Relying on a statutory construction argument, Sanchez contends that § 924(e)(1) applies only when the defendant is convicted of unlawful possession under § 922(g) and also some other offense.[9]

---

[8] As part of his argument, Sanchez relies on People v. Steinberg, 79 N.Y.2d 673, 595 N.E.2d 845 (N.Y. 1992).  In response, the government correctly points out that the defendant in Steinberg was not convicted of second-degree murder, but rather of first-degree manslaughter, and that Sanchez has not cited any New York case in which a defendant was convicted of second-degree murder for "a pure act of omission."  In fact, even Steinberg's conviction was based on acts of both commission and omission, as he inflicted the head injury that necessitated medical treatment and ultimately proved fatal to his child.  79 N.Y.2d at 678-80, 595 N.E.2d at 846-47 (stating that "the failure to obtain medical care can also support a first degree manslaughter charge, so long as there is sufficient proof of the requisite mens rea—intent to cause serious physical injury").

[9] In particular, Sanchez points to the placement of the modifying phrase "notwithstanding any other provision of law" within § 924(e)(1) and argues that, under a plain reading of § 924(a)(2) and § 924(e)(1), an additional crime is required to impose the mandatory minimum fifteen-year sentence.  Alternatively, he argues that § 924(a)(2) and § 924(e)(1) are irreconcilable and ambiguous, and their application in his case violated his due process rights.

20

Because Sanchez did not raise this argument in the district court, our review is for plain error. United States v. Jones, 743 F.3d 826, 828 (11th Cir. 2014). An error cannot be plain unless the issue has been specifically and directly resolved by the explicit language of a statute or rule or on point precedent from the Supreme Court or this Court. United States v. Hesser, 800 F.3d 1310, 1325 (11th Cir. 2015). Sanchez has not shown plain error here.

Neither this Court nor the Supreme Court has addressed the statutory construction argument Sanchez now makes. Sanchez does not cite to any other court's decision adopting his proposed construction of § 924(a)(2) and (e)(1). Notably, the one circuit that appears to have addressed this issue has rejected it using reasoning that aligns with this Court's decision in United States v. McGatha, which determined that § 924(e)(1) is a sentencing enhancement provision that did not create a separate offense. See United States v. Perkins, 449 F.3d 794, 795 (7th Cir. 2006), cert. denied, 127 S. Ct. 330 (2006); United States v. McGatha, 891 F.2d 1520, 1526-27 (11th Cir. 1990), cert. denied, 110 S. Ct. 2188 (1990).

In addition, not only has this Court long held that § 924(e)(1) requires imposition of the mandatory minimum fifteen-year sentence if a person convicted under § 922(g) has three prior qualifying convictions, we have repeatedly affirmed fifteen-year mandatory minimum sentences under § 924(e)(1) where the defendant was convicted of only one count under § 922(g). See, e.g., United States v. White,

21

837 F.3d 1225, 1227, 1235 (11th Cir. 2016), cert. denied, 138 S. Ct. 1282 (2018); United States v. Gandy, 710 F.3d 1234, 1236, 1241 (11th Cir. 2013), cert. denied, 134 S. Ct. 304 (2013); United States v. Robinson, 583 F.3d 1292, 1294, 1297 (11th Cir. 2009).  Finally, the statute does not run afoul of the Due Process Clause, because it "specif[ies] the range of available sentences with sufficient clarity." Beckles v. United States, 580 U.S. __, __, 137 S. Ct. 886, 892 (2017) (internal quotation marks omitted).  An ordinary person would understand that § 924(e)(1) enhances a conviction under § 922(g).  Under these circumstances, any error could not be plain.

### III.  CONCLUSION

For all these reasons, we affirm the district court's determination that Sanchez was an armed career criminal under the ACCA and its imposition of the mandatory minimum fifteen-year sentence.

**AFFIRMED.**