[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-11676

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

HABIB GEAGEA PALACIOS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:21-cr-20042-MGC-1

_____

Before LUCK, BRASHER, and ABUDU, Circuit Judges.

PER CURIAM:

Habib Geagea Palacios appeals the conviction, sentence, and forfeiture that followed his guilty plea. We affirm in large part, dismiss in part for lack of jurisdiction, and remand to allow the district court to correct a clerical error in Palacios's judgment.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

A grand jury indicted Palacios in 2021 on one count of conspiracy to dispense and distribute a controlled substance, in violation of 21 U.S.C. section 846, and five counts of dispensing and distributing a controlled substance, in violation of 21 U.S.C. section 841(a)(1). The indictment alleged that Palacios would have to forfeit certain property if convicted. Palacios pleaded guilty, and the government dismissed four of the dispensing and distributing counts. To support his guilty plea, Palacios signed a factual proffer that agreed the government could establish the following facts beyond a reasonable doubt.

From about July 2017 to October 2020, Palacios "knowingly and willfully" conspired with others to distribute and dispense Oxycodone. To that end, he owned and operated General Care Center Inc., a "cash-only pain clinic" in Miami, Florida. He hired "numerous" doctors to work at General Care and paid them between $60 to $120 per Oxycodone prescription. General Care doctors prescribed Oxycodone to patients with no medical need for it, and "Palacios knew or had every reason to know but deliberately closed

his eyes to the fact that [General Care] physicians prescribed Oxycodone based on financial incentive and without regard to medical necessity." Palacios admitted that in furtherance of the conspiracy, he specifically "aided and abetted the unlawful distribution and dispensing of Oxycodone" to A.L., a General Care patient. Multiple General Care doctors signed factual proffers confirming that they prescribed Oxycodone "to all or nearly all of the patients [they] saw at [General Care] because Palacios directed [them] to do so."

At Palacios's change of plea hearing, the district court questioned him to ensure his plea was knowing and voluntary. The district court read Palacios the charges and asked if he understood them; explained that he faced imprisonment, fines, restitution, and a special assessment for both counts; and confirmed that he reviewed the indictment and factual proffer. Palacios proceeded to plead guilty.

The probation office then prepared a presentence investigation report that recommended a two-level enhancement to Palacios's offense level because he maintained a premises for the purpose of manufacturing or distributing a controlled substance. Palacios filed written objections to the presentence report that purported to object to the paragraph recommending the two-level enhancement—paragraph 50—by collectively objecting to "[p]aragraphs 49 through 54." Palacios did not discuss the premises enhancement in his briefing. Instead, he argued that the presentence

report "overstate[d]" the amount of drugs he should be held accountable for and that the district court should grant a variance.

Following Palacios's guilty plea, the government moved for a preliminary order of forfeiture. The district court granted the motion, entered a money judgment against Palacios in the amount of $9,765,000.00, and ordered forfeiture of several properties owned by Palacios.

Then, nearly five months after he pleaded guilty, Palacios moved to withdraw his guilty plea two days before his sentence hearing. The district court summarily denied the motion without prejudice the next day. But at the sentence hearing the day after its denial, the district court asked Palacios about the motion and made clear it would hear the motion at that time. Palacios instead withdrew the motion.

The district court proceeded with the sentence hearing, and Palacios offered no argument related to the two-level premises enhancement. The district court applied the enhancement and, after varying downward from the guideline range, sentenced Palacios to 200 months' imprisonment followed by three years of supervised release. The district court also referenced "forfeiture in th[e] case" as part of the sentence, indicating that Palacios would have to relinquish "right, title, and interest in any property." At that point in the hearing, the government acknowledged that Palacios was "contesting the forfeiture" and explained that it submitted a proposed general order of forfeiture to the court because it found a "factual error" in the initial preliminary forfeiture order. Rather than

address forfeiture at the sentence hearing, the district court adjourned the hearing and informed counsel they could schedule a forfeiture hearing if necessary.

Palacios never requested a forfeiture hearing, and the district court entered the government's proposed general order of forfeiture the same day as the sentence hearing. Soon after, the district court entered an amended criminal judgment, which did not reference forfeiture as part of his sentence.

The government later moved to vacate the original preliminary forfeiture order and amend the general order of forfeiture to reflect the proper forfeiture amount of $6,691,750.00. Palacios never responded to that motion and instead moved to appeal out of time from his amended criminal judgment. The district court granted Palacios's motion. After Palacios filed his notice of appeal, the district court also granted the government's motion to vacate the preliminary order of forfeiture and amend the general order of forfeiture. Palacios never filed an amended notice of appeal following entry of the new forfeiture order.

## STANDARD OF REVIEW

"When a defendant raises issues for the first time on appeal, we review these issues for plain error only." *United States v. Presendieu*, 880 F.3d 1228, 1237 (11th Cir. 2018). On plain error review, we will only reverse if the defendant can show there was "(1) error; (2) that is plain; (3) that affects substantial rights;" and (4) "that seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id.* (cleaned up).

## DISCUSSION

Palacios's challenges on appeal fall into three groups.  He contests (1) the district court's acceptance of his guilty plea; (2) the application of the two-level premises enhancement; and (3) several issues related to forfeiture.

### Guilty Plea

Palacios argues that the district court committed four errors when accepting his guilty plea.  He first argues that the district court did not ensure he understood the nature of the charges against him because it didn't specifically advise him on the deliberate ignorance or aiding and abetting liability theories reflected in his factual proffer.  Second, Palacios directly attacks his factual proffer, arguing that it did not contain a sufficient factual basis for either count against him.  Third, he contends that the district court erred by not advising him that his property could be forfeited.  Fourth and finally, he asserts the district court erroneously denied his motion to withdraw his guilty plea.

Palacios has not shown any plain error related to his first two challenges.  A guilty plea "must be entered voluntarily and knowingly." *Presendieu*, 880 F.3d at 1238.  Federal Rule of Criminal Procedure 11(b) "sets out procedures that district courts must follow when accepting guilty pleas" that "address the three 'core objectives' necessary for a knowing and voluntary guilty plea:  (1) that the defendant enters his plea free from coercion, (2) that he understands the nature of the charges, and (3) that he understands the consequences of his plea." *Id*.  Rule 11 does not require that the

district court "list the elements of an offense," and "[i]n simple cases . . . the district court may only need to read the indictment and afford the defendant an opportunity to ask questions." *Id.* at 1238–39. And sometimes, a factual proffer may ensure that a defendant understands the nature of the charges by "set[ting] forth in such detail the facts of the crime that it effectively incorporates the substance of the elements of the offense." *See id.* at 1239.

A district court must also ensure "that there is a factual basis for the [guilty] plea." Fed. R. Crim. P. 11(b)(3). "A 'factual basis for the plea' simply means that 'there must be evidence from which a court could reasonably find that the defendant was guilty,' and 'uncontroverted evidence of guilt' is not required." *United States v. Rodriguez*, 751 F.3d 1244, 1255 (11th Cir. 2014) (quoting *United States v. Owen*, 858 F.2d 1514, 1516–17 (11th Cir. 1988)).

There was no plain error in the district court's plea colloquy. At the change of plea hearing the district court read Palacios the charges and asked if he understood them. *Presendieu*, 880 F.3d at 1238. Palacios "points to no decision that treats" the offenses he was charged with "as complex or complicated, and our research reveals none," so this was sufficient to ensure he understood the nature of the charges before he pleaded guilty. *Id.* at 1240 (holding that conspiracy to commit bank fraud is not complex); *United States v. DePace*, 120 F.3d 233, 237 (11th Cir. 1997) (holding that "[t]he degree of complexity added by the aiding and abetting theory [wa]s minimal").

Further, Palacios's factual proffer "incorporate[d] the substance of the elements of the offense" and contained a sufficient factual basis for his plea. *Presendieu*, 880 F.3d at 1239; *Rodriguez*, 751 F.3d at 1255. A conspiracy requires (1) "an agreement between two or more people to commit a crime," (2) that "the defendant knew about the agreement[,] and (3) [that] the defendant voluntarily joined the agreement." *United States v. Azmat*, 805 F.3d 1018, 1035 (11th Cir. 2015). A conviction "under a theory of aiding and abetting" requires "the [g]overnment [to] prove: (1) [a] substantive offense was committed by someone; (2) the defendant committed an act which contributed to and furthered the offense; and (3) the defendant intended to aid in its commission." *See United States v. Camacho*, 233 F.3d 1308, 1317 (11th Cir. 2000). And a drug distribution conviction in turn requires that a person "dispensed controlled substances for other than legitimate medical purposes in the usual course of professional practice, and that he did so knowingly and intentionally." *Azmat*, 805 F.3d at 1035 (quotation omitted).

As to the conspiracy charge, Palacios's factual basis explained that he conspired to distribute a controlled substance when he agreed with others to unlawfully distribute and dispense Oxycodone, employed doctors he knew or had reason to believe were prescribing Oxycodone without regard to medical necessity, and paid them fees for each prescription. Similarly, for the aiding and abetting charge, the factual basis explained that a doctor unlawfully prescribed Oxycodone to A.L. and that Palacios aided that offense by operating General Care and paying the incentive fees. These admissions were more than enough to ensure that Palacios

understood the nature of the charges against him, *see Presendieu*, 880 F.3d at 1238, and that there was "evidence from which a court could reasonably find that" Palacios was guilty of both offenses, *Owen*, 858 F.2d at 1516.

Palacios cites *Ruan v. United States*, 597 U.S. 450 (2022), to argue that his factual proffer and plea colloquy didn't sufficiently inform him of the mens rea required by his offenses. In *Ruan*, the Supreme Court held that a doctor must have "knowingly or intentionally acted in an unauthorized manner" to be guilty of distributing a controlled substance—that is, the doctor must have knowingly or intentionally prescribed a controlled substance without a legitimate medical purpose. *See id.* at 454, 457. But *Ruan* does not help Palacios, because he agreed in his factual proffer that he acted knowingly when he "knew or had every reason to know but deliberately closed his eyes" to the fact that General Care prescriptions were issued without a medical need for them. *See United States v. Hristov*, 466 F.3d 949, 952 (11th Cir. 2006) (recognizing that deliberate ignorance is an alterative to actual knowledge). And while Palacios argues that the language of his proffer misled him about the mens rea required for the conspiracy offense because it wrongly implied that deliberate ignorance was enough to satisfy the willfulness element of this offense, this finds no support in the language of his proffer.

Even if Palacios could show any error, he wouldn't be entitled to relief because on plain error review he "must show a reasonable probability that, but for the error, he would not have

entered the plea." *United States v. Dudley*, 5 F.4th 1249, 1267 (11th Cir. 2021) (quotation omitted).  The government's case against Palacios was strong and included admissions from multiple General Care doctors that they prescribed Oxycodone to all or nearly all patients at Palacios's direction.  In light of this evidence, "the probability is virtually zero" that Palacios would have changed his decision to plead guilty had any of the alleged deficiencies in his plea colloquy and factual proffer been remedied.  *See id.* (quotation omitted).

As to Palacios's third argument, we agree with him that the district court erred when it failed to inform him of the possibility of forfeiture at his change of plea hearing, *see* Fed. R. Crim. P. 11(b)(1)(J) (requiring the district court to inform the defendant of "any applicable forfeiture"), but he hasn't shown a reasonable probability that he would have pleaded not guilty absent this error. Palacios was well aware of the possibility of forfeiture when he pleaded guilty:  his indictment alleged that his property was subject to forfeiture, the government filed notices before his change of plea hearing stating it might seek forfeiture of various properties, and he later claimed in his motion to withdraw his guilty plea that he was concerned about "the potential seizure of properties" when he pleaded guilty. *See United States v. Vonn*, 535 U.S. 55, 59 (2002) ("[A] reviewing court may consult the whole record when considering the effect of any [rule 11] error on substantial rights.").  Since Palacios was already aware of the potential forfeiture, he has not shown a reasonable probability that he would have continued to plead not

guilty had the district court reminded him of it at his change of plea hearing. *Dudley*, 5 F.4th at 1267.

Fourth and finally, we can't review the denial of Palacios's motion to withdraw his guilty plea. "It is 'a cardinal rule of appellate review that a party may not challenge as error a ruling or other trial proceeding invited by that party.'" *United States v. Ross*, 131 F.3d 970, 988 (11th Cir.1997) (quoting *Crockett v. Uniroyal, Inc.*, 772 F.2d 1524, 1530 n.4 (11th Cir.1985)). The district court, after initially denying Palacios's motion without prejudice, invited him to offer argument on it at the sentence hearing. Instead of pursuing his motion, Palacios withdrew it and therefore invited any error in the district court's denial of the motion. *See United States v. Masters*, 118 F.3d 1524, 1525–26 (11th Cir. 1997) (holding we could not review an alleged error when the defendant objected to an upward departure but later withdrew the objection).

### Premises Enhancement

Palacios next raises three issues related to the district court's application of the two-level premises enhancement. First, he argues the district court erred in not addressing his objection before applying the enhancement. Second, he contends the district court erred in applying the enhancement because it does not apply to unlawful prescription cases or cases in which the controlled substance was never manufactured or present at the premises. And third, he asserts there was insufficient evidence to support the enhancement.

Palacios's first argument, which we review for plain error since he did not object to the district court's failure to address his objection, fails. *Presendieu*, 880 F.3d at 1237. When a defendant disputes any portion of a presentence report, the district court must "rule on the dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing." Fed. R. Crim. P. 32(i)(3)(B). We have emphasized that a defendant who raises an issue with his presentence report "must first present it to the district court, 'raising that point in such clear and simple language that the trial court may not misunderstand it.'" *United States v. Corbett*, 921 F.3d 1032, 1043 (11th Cir. 2019) (alteration accepted) (quoting *United States v. Massey*, 443 F.3d 814, 819 (11th Cir. 2006)). "When the statement is not clear enough to inform the district court of the legal basis for the objection, the objection is not properly preserved." *Id.* (cleaned up).

Palacios did not adequately present an objection to the paragraph of his presentence report that recommended applying the enhancement. In his written objections he only cited this paragraph in passing, and he made no substantive argument related to it in his written objections or at his sentence hearing. Since he didn't clearly inform the district court of his objection or provide the legal basis for one, the district court did not err when it did not address the premises enhancement. *See Corbett*, 921 F.3d at 1043.

Second, because Palacios did not properly preserve his objection, we also review the district court's application of the

enhancement for plain error, and we find none. "An error cannot be plain unless the issue has been specifically and directly resolved by the explicit language of a statute or rule or on point precedent from the Supreme Court or this Court." *United States v. Sanchez*, 940 F.3d 526, 537 (11th Cir. 2019). Sentencing guideline section 2D1.1(b)(12) provides for a two-level enhancement to a defendant's offense level "[i]f the defendant maintained a premises for the purpose of manufacturing or distributing a controlled substance." U.S.S.G. § 2D1.1(b)(12). The manufacture or distribution "need not be the sole purpose for which the [premises] was maintained, but it must be a 'primary or principal,' rather than an 'incidental or collateral,' use." *United States v. Rodriguez*, 75 F.4th 1231, 1242 (11th Cir. 2023) (quoting U.S.S.G. § 2D1.1 cmt. n.17).

While Palacios argues the enhancement does not apply to cases involving unlawfully issued prescriptions or when the controlled substance was not manufactured or present on the premises, he doesn't cite any "explicit language" in section 2D1.1(b)(12) that makes this distinction. *See Sanchez*, 940 F.3d at 537. And while he argues the word "distribut[e]" in section 2D1.1(b)(12) must be given the same meaning it carries in 21 U.S.C. section 802(11), he does not identify any decision adopting this reading. *See id.* (rejecting plain error challenge in part because "[n]either this [c]ourt nor the Supreme Court ha[d] addressed the statutory construction argument" made by the defendant).

Third, it was also not plain error to find that there was a sufficient basis for applying the enhancement. Factual proffers from

both Palacios and others confirmed that General Care doctors issued prescriptions to nearly all patients without regard to whether there was a legitimate medical purpose for the prescriptions. With this evidence, the district court did not plainly err in finding that at least one of General Care's principal or primary purposes was distributing Oxycodone. *See Rodriguez*, 75 F.4th at 1242–43.

## *Forfeiture*

Palacios ends by arguing that the district court made several errors when ordering forfeiture. First, he argues that the district court erred in failing to include forfeiture in the written judgment. Second, he raises a series of procedural challenges to forfeiture, arguing the district court erred when it (1) granted the government's initial motion for a preliminary forfeiture order without affording him a chance to respond or holding a hearing;[1] (2) entered a general order of forfeiture after initially adopting a preliminary order of forfeiture without awaiting a motion from the government, giving Palacios an opportunity to respond to the government's

---

[1] After this appeal was filed, the district court purported to vacate the original preliminary order of forfeiture. That would normally moot any issue related to that order. *See Friends of Everglades v. S. Fla. Water Mgmt. Dist.*, 570 F.3d 1210, 1216 (11th Cir. 2009) ("An issue is moot when it no longer presents a live controversy with respect to which the court can give meaningful relief." (quotation omitted)). But the district court didn't have jurisdiction to vacate an order implicated by Palacios's appeal, so this did not moot Palacios's procedural challenge to the original preliminary forfeiture order. *See Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982) (stating that a notice of appeal "divests the district court of its control over those aspects of the case involved in the appeal").

proposed order, or holding a hearing; (3) did not announce the specific forfeiture at his sentencing; and (4) never held a hearing on forfeiture. [**BlBr. at 32–37.**] And third, he raises several challenges to the district court's amended forfeiture order.

Starting with Palacios's challenge to his written judgment, we agree the district court erred by not referencing forfeiture as part of his sentence in the judgment. *See* Fed. R. Crim. P. 32.2(b)(4)(B) ("The court must . . . include the forfeiture order, directly or by reference, in the judgment[.]"). But the district court's "failure to do so may be corrected at any time under [r]ule 36." *Id.* So we remand this case for the sole purpose of correcting that error. *See United States v. Dahda*, 852 F.3d 1282, 1298 (10th Cir. 2017) ("[T]he failure to state the forfeiture amount in the judgment does not warrant vacatur of the forfeiture.").

Palacios's remaining challenges don't fare as well. His various procedural challenges fail because, since he didn't raise these issues with the district court, he must demonstrate that any plain error affected his substantial rights. *United States v. Sosa*, 782 F.3d 630, 636–37 (11th Cir. 2015). Yet Palacios never explains how his substantial rights were affected by any error. As one example, Palacios argues the district court should have held hearings on the issue of forfeiture. But he never explains what he would have presented at these hearings. As another, he fails to explain how his substantial rights were affected by the district court not announcing forfeiture at his sentence hearing. Palacios knew the government would seek an amended order and he raised no objection to

the district court proceeding with forfeiture after sentencing. Without any explanation of how his substantial rights were affected, Palacios has not shown how any plain error warrants reversal.

Finally, we can't review Palacios's challenges to the district court's amended forfeiture order because Palacios did not appeal it. When a defendant appeals a final judgment, he "draws in question all *prior* non-final orders and rulings" that produced it. *Barfield v. Brierton*, 883 F.2d 923, 930–31 (11th Cir. 1989) (emphasis added). But the amended forfeiture order was entered months after the district court entered the judgment Palacios appealed, and Palacios never filed an amended notice of appeal. *See* Fed. R. Crim. P. 32.2(b)(4)(C) ("If the court later amends or declines to amend a forfeiture order to include additional property under [r]ule 32.2(e), the defendant or the government may file an appeal regarding that property[.]"). So, we don't have jurisdiction to review Palacios's attempt to challenge it.

## CONCLUSION

We dismiss this appeal in part to the extent Palacios appeals the amended forfeiture order. Otherwise, we find no error other than the district court's failure to include forfeiture in the written criminal judgment. We remand for the sole purpose of correcting that clerical error.

**AFFIRMED IN PART, DISMISSED IN PART, AND REMANDED**.