United States Court of Appeals,

Eleventh Circuit.

No. 95-9035.

UNITED STATES of America, Plaintiff-Appellee,

v.

James M. TODD, Defendant-Appellant.

March 31, 1997.

Appeal from the United States District Court for the Northern District of Georgia. (No. 1:94-CV-147-01-WCO), William C. O'Kelley, District Judge.

Before ANDERSON, Circuit Judge, and FAY and KRAVITCH, Senior Circuit Judges.

FAY, Senior Circuit Judge:

Defendant James M. Todd ("Todd") was convicted on one count of embezzlement from an employee benefit plan in violation of 18 U.S.C. § 664 (1994). Todd appeals his conviction, arguing that the district court erred in excluding certain evidence.[1] Because we agree that the district court's evidentiary rulings were erroneous, we reverse the conviction and remand for a new trial.

BACKGROUND

In 1980, Todd founded Clinical Medical Equipment, Inc. ("CME"). CME was in the business of selling and servicing medical equipment. Todd was the president and sole shareholder of CME. At its inception, CME consisted of three or four employees working out of Todd's home. The company lost approximately $80,000.00 during its first year. During the eighties, CME expanded considerably and

---

[1]On appeal, Todd also contends that the district court erred in its jury instructions. Having concluded that Todd is entitled to a new trial on the evidentiary issue, it is unnecessary that we address Todd's appeal of the jury instructions.

enjoyed remarkable success. Towards the end of the eighties and at the height of CME's success, the company employed eighty employees and posted approximately seven million dollars in sales.

In October of 1987, CME adopted a 401(K) pension plan ("the Plan"). One reason that CME adopted the Plan was to attract qualified employees. Todd was the sole trustee of the Plan. Pursuant to the terms of the Plan, CME employees, including Todd, could contribute to the Plan through payroll withholdings. CME would then match a percentage of the employees' contributions. Thereafter, investments check would be drawn from the Plan's bank account and sent to the Plan's administrator, Consolidated Planning, Inc. ("Consolidated"). Consolidated would in turn make the requisite investments on behalf of the employees. Initially, the Plan went according to plan, CME made its required employer payments and the employees' withdrawals were deposited in a bank account established exclusively for the Plan.

At some point in 1988, the Internal Revenue Service ("IRS") contacted CME about missing 940 ("Employer's Annual Federal Unemployment Tax Return") and 941 ("Employer's Quarterly Federal Tax Return") forms from the third and fourth quarters of 1985. Apparently, Mary Rupert, a CME employee at the time had failed to submit these forms to the IRS. This oversight resulted in CME owing approximately $680,000.00[2] to the IRS. The IRS placed a lien on CME and Todd personally. Around the same time in 1988, Todd stopped the transfer of employees' contributions from CME's payroll

---

[2]The $680,000.00 figure is derived from adding interest and a one hundred percent late-filing penalty increase to the original $197,000.00 owed.

account to the Plan's account. Moreover, the employees' Plan contributions commingled with CME's payroll account were expended on matters not connected with the funding of the Plan.

Throughout the period that the Plan's funds were being misused, various people informed Todd that using employees' contributions on expenses not affiliated with the Plan violated his fiduciary responsibilities as trustee of the Plan. For instance, Scott Wilson, CME's chief operating officer from April 1988 through March 1989, aware that Todd was not forwarding the employees' contributions to the Plan, advised Todd that he faced civil and criminal penalties as a result of his failure to fund the Plan. Consolidated, also aware of Todd's failure to fund the Plan, sent Todd letters outlining his responsibilities as the trustee of the Plan and advising him of potential criminal sanctions.

In November of 1990, the Department of Labor initiated an investigation of CME to determine if the Plan was in compliance with the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001-1461 (1994). During this investigation, Todd admitted that employees' contributions had been used to meet other expenses, such as the payroll and the tax debt. Todd also stated that the employees were aware that their contributions to the Plan had been used in an attempt to pay off the amount owed the IRS. From September 1989 to January 1992, a Department of Labor investigator calculated that CME had withheld more than $100,000.00 from Plan employees' paychecks which Todd had then failed to deposit with the Plan. Based on this information, Todd was eventually charged in a one count indictment with embezzling funds from the Plan in

violation of 18 U.S.C. § 664 (1994).

In order to prove a violation of § 664, the government must show that a defendant (1) embezzled (2) funds (3) from an employee benefit plan, and (4) with the specific intent to deprive the plan of its funds. *United States v. Busacca,* 936 F.2d 232, 239-40 (6th Cir.), *cert. denied,* 502 U.S. 985, 112 S.Ct. 595, 116 L.Ed.2d 619 (1991). From the outset, Todd attempted to establish as a defense that he lacked the specific criminal intent to deprive the Plan of its funds. In support of this theory of defense, Todd argues that CME employees were compensated and treated so well that they were more concerned with the survival of the company than the illegal use of their employees' contributions to the Plan. To this end, Todd contends that the employees implicitly authorized him to use the Plan's funds in an attempt to save CME and consequently the employees' jobs and salaries.

Throughout the trial, Todd's counsel attempted to establish this defense through the testimony of various employee witnesses. For instance, Karl Suchanek, a CME employee testified outside the presence of the jury that he thought he was paid well. In response to the question, "[w]ould it be fair to say that the employees wanted him to do whatever it took to keep this good business going," Suchanek, again, outside the presence of the jury, responded in the affirmative. The government objected to the line of questioning on the ground of irrelevancy and the district court sustained the objection. Consequently, the jury never had the opportunity to hear this portion of Suchanek's testimony.

Defense efforts to elicit similar testimony from other

employee witnesses were similarly rejected. R8-740 (Perry McDaniel's testimony of whether Todd acted improperly in using Plan's money not allowed). The district court also rejected testimony of employees witnesses' salaries and benefits. R6-276 (testimony of Scott Wilson's salary and car allowance excluded); R6-374-75 (testimony of Mary Ruperts' salary increases excluded); R6-397 (testimony of Dean Lanford's present salary excluded); R6-419 (testimony of John Chiappetta's CME salary excluded); R6-457 (testimony of Stephen Randall's salary increase and car allowance not allowed); R8-552 (testimony of Jody Winter's salary increase excluded).

Despite the court's exclusion of defense evidence relating to employees' authorization, salaries and benefits, the government was allowed to present evidence of employees' lack of authorization and benefits and salaries given to Todd and his family. Utilizing this evidence, the government argued in part that in order to maintain the salaries and benefits for himself and family, Todd embezzled funds from the Plan. Notwithstanding the government's knowledge that Todd was neither allowed to offer certain evidence to rebut the government's theory of criminal intent nor introduce evidence favorable to Todd's "employee authorization" defense, the government made the following comments during its rebuttal:

> And think of it. Use your common sense, ladies and gentlemen. Would you have agreed to keep throwing in money into someone else's corporation? They had a stake perhaps to some extent in keeping their jobs. [But i]t was his corporation, his money to lose, and *it simply defies logic to think that the employees would authorize this.*

R12-1017-18 (emphasis added).

The jury found Todd guilty of violating 18 U.S.C. § 664

(1994).  The district court sentenced Todd to five years probation, with the following conditions:  that he be confined at home for a period of thirty months, perform 300 hours of community service and pay restitution.  Todd timely filed a notice of appeal from his conviction.  Todd appeals from various evidentiary rulings made by the district court, contending that these rulings were erroneous in depriving Todd of evidence necessary to his defense and necessary to rebut the government's theory of intent.[3]  We have jurisdiction to consider Todd's appeal pursuant to 28 U.S.C. § 1291 (1994).

STANDARD OF REVIEW

We review a district court's evidentiary rulings under the abuse of discretion standard.  *United States v. Sheffield,* 992 F.2d 1164, 1167 (11th Cir.1993);  *United States v. Lankford,* 955 F.2d 1545, 1548 (11th Cir.1992).  In particular, we similarly review a trial court's ruling on the relevance of evidence under the abuse of discretion standard.  *United States v. Kelly,* 888 F.2d 732, 743 (11th Cir.1989).  We also note that "[s]uch discretion does not, however, extend to the exclusion of crucial relevant evidence necessary to establish a valid defense."  *United States v. Kelly,* 888 F.2d 732, 743 (11th Cir.1989) (quoting *United States v. Anderson,* 872 F.2d 1508, 1515 (11th Cir.), *cert. denied,* 493 U.S.

_____

[3]Todd also argues that the evidentiary rulings were in violation of his constitutional rights.  "A fundamental principle of constitutional law dictates that a federal court should refuse to decide a constitutional issue unless a constitutional decision is strictly necessary."  *Cone Corp. v. Florida Dep't of Transp.,* 921 F.2d 1190, 1210 (11th Cir.), *cert. denied,* 500 U.S. 942, 111 S.Ct. 2238, 114 L.Ed.2d 479 (1991).  In view of our disposition of the appeal on the ground that the district court abused its discretion, it is unnecessary to reach Todd's appeal of the evidentiary rulings on constitutional grounds.

1004, 110 S.Ct. 566, 107 L.Ed.2d 560 (1989)) (citations and internal quotation marks omitted). "When "proffered evidence is of substantial probative value, and will not tend to prejudice or confuse, all doubt should be resolved in favor of admissibility.' " *United States v. Wasman,* 641 F.2d 326 (5th Cir. Unit B April 1981) (quoting *United States v. Holt,* 342 F.2d 163, 166 (5th Cir.1965)). Under the abuse of discretion standard, we believe the district court erred in excluding the disputed evidence. Accordingly, we reverse Todd's conviction and remand for a new trial.

## DISCUSSION

The district court for the most part excluded defense evidence relating to employees' salaries, benefits, and whether employee authorization had been given to Todd to use the Plan's funds.[4] The district court excluded this evidence on the ground that it was not relevant.

Todd advances at least two reasons why he believes the evidence excluded by the district court is relevant. First, Todd claims the excluded evidence was crucial to his theory of defense. Second, Todd asserts the evidence was needed to rebut the government's evidence and arguments. We will first determine whether the district court excluded relevant evidence that was

---

[4]In addition, the district court excluded evidence relating to CME's assets and net worth. While our discussion will not specifically refer to these items of evidence, our conclusion concerning the admissibility of employees' salaries and benefits applies equally to CME's assets and net worth. Although the government correctly argues that evidence to suggest repayment is legally irrelevant, the evidence of CME's assets and net worth could have been used to rebut the government's theory of Todd's criminal intent.

crucial to Todd's defense. However, before making this determination, we must decide whether Todd's proffered defense is valid. *United States v. Anderson,* 872 F.2d 1508, 1515 (11th Cir.1989).

Todd attempted to offer as a defense that he in good faith believed the employees had authorized the use of the Plan's funds to save the company. In support of this defense, Todd directs our attention to *United States v. Dixon,* 609 F.2d 827 (5th Cir.1980). In *Dixon,* a union official was convicted of embezzling funds from his union in violation of 29 U.S.C. § 501(c) of the Labor-Management Reporting and Disclosure Act. This Court found that "[t]here are two types of offenses under § 501(c): those involving the authorized use of funds and those involving the unauthorized use of funds." *Id.* at 829. The Court added that "[i]n cases involving authorized use, ... the government must also prove that the defendant "lacked a good faith belief that the expenditure was for the legitimate benefit of the union.' " *Id.* (citations omitted). Both parties agree that union cases involving the embezzlement of funds under § 501(c) are analogous to the case at hand. Relying on this case and the above quoted language, Todd argues his authorization defense is a legally, valid one.

Indeed, the government acknowledged the defense before the district court:

> [T]here was a case in the Fifth Circuit, controlling Fifth Circuit case, which seems to suggest that if the defendant had a good faith belief that his actions were authorized, that that may be a defense.... there is language in a Fifth Circuit case which seems to suggest that evidence of what individual employees may have thought, what use the funds were being put to, could arguably support a good faith belief and authorization defense.

R4-17-18.  Despite this government "admission" in the trial court, in its brief before this Court, the government now argues that the law "appears to float somewhat."  According to the government, "proof of fraudulent intent seems to be enough with regard to whether the disputed expenditure was authorized."  *See United States v. Durnin,* 632 F.2d 1297, 1300 n. 5 (5th Cir. Unit A 1980) ("Since the government thoroughly established appellant's fraudulent intent to deprive the local of its funds, we find it unnecessary to characterize this case as one of either authorized or unauthorized use.").[5]  While proof of fraudulent intent may be enough under union fund embezzlement cases, it is unnecessary for us to decide whether such proof is sufficient in our case, a pension fund embezzlement case.  We do not need to address this issue because the government failed to raise the argument before the district court.  *See Caban-Wheeler v. Elsea,* 904 F.2d 1549, 1557 (11th Cir.1990) (An appellate court generally will not consider a legal issue or theory unless it was presented to the trial court.).  Instead of raising the *Durnin* argument before the district court, the government orally recognized and acknowledged the *Dixon* defense.  Accordingly, the government is precluded from raising the issue for the first time on appeal.  The issues surrounding this defense were tried and argued.  Under these circumstances we must deal with the case as presented.

---

[5]In *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981) (en banc), this court adopted as binding precedent decisions of the Fifth Circuit, including Unit A panel decisions of that circuit, handed down prior to October 1, 1981.  *See Limelight Productions, Inc., v. Limelite Studios, Inc.,* 60 F.3d 767, 769 n. 1 (11th Cir.1995).

With the government having tried the case with a recognition of the "consent" defense, we must now determine if the district court abused its discretion in excluding evidence crucial to this defense. Todd's defense was based on the premise that since his employees were compensated and treated so well they implicitly authorized him to use the Plan's funds to save CME employees' jobs and salaries. Todd sought to introduce evidence of employees' salaries and benefits to prove the employees were paid extremely high salaries relative to others in the market place. In our opinion, evidence to illustrate this point is relevant to Todd's good faith defense that employees would authorize the use of the Plan's funds for the benefit of the company and its employees. Contrary to the government's position, we believe it is plausible that employees could and would authorize the use of Plan's funds to save the company if evidence demonstrated that employees were paid very large salaries and were more concerned with the survival of their jobs than the survival of the Plan. To the extent the district court excluded this evidence, we believe the district court abused its discretion and the evidence should have been admitted to assist Todd in his defense.

The government further argues that evidence of employees' salaries was already admitted via the payroll records, thus other evidence concerning employees' salaries would be cumulative and was properly excluded. *See* Fed.R.Evid. 403. Yet, as the record shows the district court only admitted the payroll records because no objection had been raised. The record thoroughly establishes that defense questions concerning employees' salaries were not allowed

and the government candidly admitted that defense counsel was restricted in arguing that large salaries related to employee authorization. From our review of the record, it seems doubtful that Todd's counsel could have used the payroll records during its case in chief and closing arguments.[6]

In addition, we believe the evidence was also relevant to combat the government's criminal intent argument that Todd was motivated by greed and selfishness to fraudulently deprive the employees of the Plan's funds. Throughout the trial, the government offered evidence portraying Todd as an individual motivated by greed and the only one with an interest in saving the company. The government introduced evidence relating to the salaries and benefits extended to Todd and his family, particularly Todd's son-in-law. We believe the excluded testimony was relevant to Todd's intent. Evidence of employee salaries and benefits could have been used to rebut the government's evidence and argument that Todd was the only one with an interest to save the company. If Todd were able to introduce evidence of large employees' salaries and benefits, this evidence could be used to show that others had a strong interest in and motivation to save the company. This could have put quite a different spin on the question of Todd's intent and actions. By disallowing the disputed evidence, the district court deprived Todd of a chance to rebut the government's intent argument.

Perhaps, the most convincing reason that the evidence is

---

[6]We have considered the government's other arguments as to why the evidence was not relevant and find them to be without merit.

relevant are the comments made by the government in its rebuttal. The government stated that it was Todd's "corporation, his money to lose, and it simply defies logic to think that the employees would authorize this." The district court allowed the government to present evidence to establish Todd's intent and motive, however, the defense was prohibited from proffering rebuttal evidence on the same issue. In light of the district court's rulings, the government still proceeded to argue "that it defies logic to think that the employees would authorize this." Because Todd was unable to introduce evidence of employees' salaries and benefits, the government's argument went unchallenged. We believe the evidence should have been admitted in order to allow Todd to argue that the employees could have authorized the use of Plan's funds. The jury might have concluded that the employees would have and did agree to the use of any and all funds to keep the company operating. Accordingly, we hold that the exclusion of the disputed evidence was erroneous.

Having decided that the district court erred in excluding testimony of employees' salaries, benefits, and potential authorization, we must next determine whether the error was "harmless beyond a reasonable doubt." *United States v. Lankford,* 955 F.2d 1545, 1552 (11th Cir.1992). This Court has previously stated that where "the excluded testimony related to the determinative issue of intent, we cannot say that the error was harmless." *United States v. Gaskell,* 985 F.2d 1056, 1063 (11th Cir.1993). In our case, the excluded evidence goes directly to Todd's criminal intent. The evidence excluded by the district

court was relevant to refute the government theory of Todd's specific criminal intent and relevant to establish a defense. The disputed evidence might well have established that CME employees authorized Todd to use the Plan's funds and that CME employees had a strong interest in saving the company. We cannot conclude that the exclusion of the disputed evidence was harmless beyond a reasonable doubt.

CONCLUSION

For the foregoing reasons, we REVERSE Todd's conviction and REMAND for a new trial.

REVERSED and REMANDED.

KRAVITCH, Senior Circuit Judge, dissenting:

Because I do not believe that the district court's evidentiary rulings in this case constituted an abuse of discretion, respectfully, I dissent.

Todd contends that the district court reversibly erred when it excluded, as irrelevant, testimony that: (1) Todd's employees implicitly authorized his appropriation of their contributions to a 401(k) pension plan ("the Plan"); and (2) Todd's employees earned high salaries. "Evidentiary rulings challenged on appeal will not be overturned absent clear abuse of discretion." *United States v. Veltmann,* 6 F.3d 1483, 1491 (11th Cir.1993). It is not enough that we would have admitted this evidence had we presided over the case. "[U]nder the abuse of discretion standard of review there will be occasions in which we affirm the district court even though we would have gone the other way had it been our call. That is how an abuse of discretion standard differs from a *de novo*

standard of review." *In re Rasbury,* 24 F.3d 159, 168 (11th Cir.1994).

Todd argues that the district court should have admitted this evidence because it was relevant to support his defense that he lacked the specific intent to deprive the Plan of assets. Specifically, Todd claims he believed in good faith that his employees implicitly authorized him to use their pension contributions to keep the company afloat. Assuming that this theory constituted a valid defense, [1] the proffered testimony regarding ratification[2] was too limited and too equivocal to transform the district court's ruling into an abuse of discretion. Todd had to show that he in good faith believed that *all* the Plan's participants would ratify his actions. Evidence that certain, even most, of Todd's workers earned excellent salaries would have had little probative value in establishing that Todd in good faith believed *all* participating employees would ratify his use of the Plan's funds.

---

[1]The parties cite several cases decided under the union fund embezzlement statute, 29 U.S.C. § 501(c), in discussing this purported defense. Given the dearth of caselaw on pension fund embezzlement, courts previously have considered union fund embezzlement decisions in ruling on pension fund cases. *See, e.g., United States v. Butler,* 954 F.2d 114, 119 n. 2 (2d Cir.1992). Because union funds legitimately may be used in a number of ways, but pension funds generally only may be used for investment or payment of benefits and administrative costs, I question whether judge-made rules from the union cases regarding authorization or ratification ought to apply to pension cases.

[2]Because Todd began diverting pension funds before his employees knew all of the facts about his actions or the company's financial condition, the employees could not *authorize,* even implicitly, Todd's tactics. As a result, at most, Todd could have had a good faith belief that once the employees learned of the situation, they would *ratify* his actions.

The proffered opinions of employees regarding ratification are of equally limited probative value. The majority notes that during questioning out of the jury's presence, one witness answered affirmatively when asked if "*the employees* wanted [Todd] to do whatever it took to keep this good business going." Majority Opinion at 1203 (emphasis added). It is not clear from this proffer whether *all,* or simply the *majority,* of the participating employees shared this belief, or that they knew exactly what they were ratifying. In another key passage cited by Todd, a witness proposed to testify that he "felt everybody was *pretty much* pulling for [Todd] to do whatever he [could] to get this company going...." R6:227 (emphasis added). These statements simply lack sufficient scope and clarity to support a ruling that the district court had to admit them.

Moreover, Todd acknowledges that employee pension contributions steadily plummeted as word of his actions spread. This fact shows that Todd's employees did not support his use of their pension funds. Todd's alleged belief that his employees would ratify his actions proved so wrong that it appears manifestly unreasonable, and thus, unlikely to have been held in good faith. *See United States v. Cheek,* 498 U.S. 192, 203-04, 111 S.Ct. 604, 611-12, 112 L.Ed.2d 617 (1991) (noting that where jury must find specific intent "the more unreasonable the asserted beliefs or misunderstandings are, the more likely the jury ... will find that the Government has carried its burden of proving knowledge").[3]

---

[3]Todd also asserts that the salary evidence was relevant to rebut the government's claims that he diverted funds from the Plan for selfish reasons. Evidence that Todd generally paid his

In sum, the evidentiary restrictions imposed by the district court in this case do not appear to be of the same character or significance as those limitations enforced by the district court in the main case cited by Todd, *United States v. Sheffield,* 992 F.2d 1164 (11th Cir.1993) (reversing conviction where district court prevented defendant from impeaching key government witness with prior inconsistent statement and from introducing evidence to negate intent). "As we have stated previously, the abuse of discretion standard allows "a range of choice for the district court, so long as the choice does not constitute a clear error of judgment.' [I] believe the district court's decision was within its range of choice, although perhaps not by a wide margin, and that no clear error of judgment has been demonstrated." *Rasbury,* 24 F.3d at 168 (internal citation omitted).

Accordingly, I would affirm Todd's conviction.

---

workers well would not show an absence of greed. To the contrary, Todd acknowledged that he paid high employee salaries so that he could recruit and retain quality workers; Todd, therefore, paid high salaries not because he was generous, but rather because he needed good employees in order to run a profitable company.