[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-10222
Non-Argument Calendar

_____

D.C. Docket No. 6:19-cr-00123-RBD-GJK-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

WILLIAM TOSCA,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(February 19, 2021)

Before LAGOA, BRASHER, and ED CARNES, Circuit Judges.

PER CURIAM:

The federal Sex Offender Registration and Notification Act (SORNA)[1] imposes requirements on sex offenders, which are enforceable by criminal sanctions. One of those requirements is that "[a] sex offender shall register, and keep the registration current, in each jurisdiction where the offender resides." 34 U.S.C. § 20913(a). William Tosca was convicted for knowingly failing to comply with that requirement after travelling in interstate commerce, in violation of 18 U.S.C. § 2250. This is his appeal.

In 2013 Tosca was convicted in Massachusetts state court of indecent assault and battery on a person fourteen years of age or older. Under Massachusetts law, that conviction made him a sex offender and required him to register as one with that state's Sex Offender Registry Board. He did so. But when he moved to Florida in 2016, Tosca did not register as a sex offender there. In 2019 he was arrested and later indicted by a federal grand jury for "knowingly fail[ing] to register and update a registration as required by [SORNA]." A jury found him guilty of that charge, and he was sentenced to time served and five years of supervised release.

Tosca contends that the district court erred in four ways during his trial: (1) by not asking the prospective jurors the questions he submitted; (2) by not

---

[1] SORNA was enacted as part of the Adam Walsh Child Protection and Safety Act of 2006, Pub. L. No. 109-248, 120 Stat. 587, 590–611 (2006).

striking the entire venire; (3) by excluding evidence about the facts of his sex offense that Tosca wanted the jury to hear; and (4) by not granting his motion for judgment as a matter of law based on insufficiency of the evidence.

I.

The first two issues are related, so we will discuss them together. Before trial, Tosca submitted proposed voir dire questions for the venire. He proposed asking the venire members whether they: always read the fine print before signing an important document; had never been confused by legal papers; had heard of implicit racial basis; believed that it was impossible to have a racial bias without realizing it or intending to have it; interacted with African Americans on a regular basis; believed that sex offenders could not be rehabilitated; and believed that all sex offenses are the same. The government objected to those questions, and the district court declined to ask them. The court said that they were "doctrinal questions," which were an attempt "to try to precondition the jurors to the theory of the case." The court said that the questions it asked would instead focus on determining if the members of the venire could be fair and impartial.

During voir dire, a few prospective jurors stated that they had a close family member who either had been required to register as a sex offender or had been a victim of sexual abuse. All but one of those prospective jurors referred to crimes involving a minor. None of those people were selected to serve on the jury.

3

Also during voir dire, a prospective juror said that he owned a store that had often had thefts and that "the majority of the cases that [he] deal[s] with are African-American theft." The court questioned him closely about his ability to be unbiased and got him to admit that he would have to work to overcome his bias against African Americans:

| QUESTION: | Well, Mr. Tosca is African-American. Is there anything about the fact that he's African-American that you think might cause you to judge him more harshly than you would somebody who's, for instance, Caucasian, Asian, or some other race? |
|---|---|
| ANSWER: | I'd like to think not. I think in my situation, the prevalence of my interactions around — let's just say my run-in with staff. I'd like to think not, Judge. I'm just — yeah. |
| QUESTION: | Well, so I'm not doing my job if I let that go — |
| ANSWER: | Yeah. |
| QUESTION: | "I'd like to think so." "I'd like to think so" doesn't cut it. |
| ANSWER: | Yeah. |
| QUESTION: | If you can't tell me unequivocally that Mr. Tosca's race is not going to be a factor in your deliberations, then I need you to tell me that. |
| ANSWER: | Okay. No, it will not be a factor. |
| QUESTION: | Okay. Are you sure about that? Because you don't seem sure. |

ANSWER:                Well, yeah. I've had to reflect on this in terms of — I'm a very disciplined, focused individual who can make it not a factor, is how I feel.

QUESTION:           Well, it sounds to me — you correct me if I'm wrong, because I don't want to be wrong. But I want to tell you what it sounds to me like. It sounds to mean [sic] like you're concerned that you may have a bias against Mr. Tosca because he's African-American, but that you would work to overcome that bias.

ANSWER:                Correct.

QUESTION:           So if you start off with a bias against Mr. Tosca, then you would have to work to overcome. Is that what you're telling me?

ANSWER:                Fair enough. Yep.

After that exchange, the court asked the rest of the venire members if anybody shared the view that because Tosca "is African-American, that somewhere there would be some extra work that would need to be done in order to give him a fair trial." They answered no.

The government and Tosca both moved to strike for cause the store owner prospective juror, and he was not allowed to serve on the jury. Tosca's counsel went further. At a sidebar, he argued that the court's interaction with the juror who had admitted his bias "conveyed to the remainder of the venire that any sort of admission on their part that they might be biased would result in an admonition from the Court." Because of that, counsel asserted, "the venire has been tainted by

5

the exchange," and he moved that the entire venire be struck.  The court denied the motion.

Tosca contends that the district court erred in refusing to ask his proposed questions of the venire, and that it erred in denying his motion to strike the entire venire after it heard the court's exchange with the problematic venire member.

"The method of conducting the voir dire is left to the sound discretion of the trial court and will be upheld unless an abuse of discretion is found."  United States v. Hill, 643 F.3d 807, 836 (11th Cir. 2011) (quotation marks omitted).  The voir dire "need only provide reasonable assurance that prejudice will be discovered if present."  Id. (quotation marks omitted).  The district court has "ample discretion in determining how best to conduct voir dire" because "the obligation to impanel an impartial jury lies in the first instance with the trial judge, and because he must rely largely on his immediate perceptions."  United States v. Montgomery, 772 F.2d 733, 735 (11th Cir. 1985) (quoting Rosales-Lopez v. United States, 451 U.S. 182, 189 (1981) (plurality opinion)).  That "discretion includes the decision whether or not to submit suggested questions to the jury."  United States v. Tegzes, 715 F.2d 505, 507 (11th Cir. 1983).

The district court did not abuse its discretion in refusing to submit Tosca's proposed questions to the venire.  The questions the district court did ask the prospective jurors about racial bias and their experience with sex offenses covered

6

the substance of some of Tosca's proposed questions. In response to those questions that were asked, no venire member indicated any potential prejudice that required further inquiry, except for one person, the store owner. And after the court's follow-up questioning, he was removed for cause. The questions Tosca contends needed to be asked did not focus on specific bias, and the district court correctly concluded that they were an attempt to precondition the jury to Tosca's theory of the case. The court was not required to do that.

As for Tosca's claim that the court should have struck the entire venire, we review the decision not to do so only for a manifest abuse of discretion. United States v. Bergman, 852 F.3d 1046, 1067 (11th Cir. 2017). The premise of Tosca's argument is that the prospective juror who expressed hesitation about being impartial toward African Americans was admonished by the court, which may have chilled other prospective jurors from expressing potential bias, and that potential required either further questioning of the entire venire or striking it.

The factual premise of the argument is false. The district court did not admonish the problematic juror. It asked him reasonable follow up questions to determine what, exactly, he meant by his statements and whether he could be impartial. There is no reason to think that anyone in the venire was chilled in any way by the prospective juror's comments or by the district court's questions and comments to him, or that the entirely reasonable and civil exchange between the

7

two somehow tainted the venire.  See Bergman, 852 F.3d at 1067 ("The transcript also does not indicate that the . . . questioning prevented any other jurors from speaking about their biases.").  Tosca's arguments to the contrary are highly speculative.  See Tegzes, 715 F.2d at 508 (rejecting a "highly speculative" argument that prospective jurors had been biased and noting that "mere awareness that other jurors have prejudices does not disqualify those jurors who heard about those prejudices").

And after its interaction with that problematic juror, the court asked the other members of the venire if any of them shared the view that it would take "extra work" to give Tosca a fair trial.  They all said no, and there is no reason to disbelieve them.  The district court did not abuse its discretion by not inquiring further or by not striking the entire venire.

## II.

Tosca contends that the district court erred in ruling that the facts of his sex offense were irrelevant and thus inadmissible.  He argues that that ruling violated his constitutional right to present a defense.

Tosca moved in limine for the court to let him put into evidence the details of his prior conviction.  He wanted to let the jury know that the victim of his prior crime was not a minor, that she was a 20-year-old woman of his own race whom Tosca had known for two months, and that she had reported Tosca's sexual crime

8

the day after it occurred, claiming that she had not consented.  Tosca argued that those facts were relevant to his knowledge of whether he had to register because, in his opinion, his triggering crime was not as bad as child molestation, and because of that the jury might believe Tosca did not know he would have to continue registering as a sex offender for a long time.

The court denied Tosca's motion, reasoning that the only fact about that earlier crime that mattered for present purposes is that he had been convicted of that earlier crime.  It ruled that the details of the crime were irrelevant unless the government opened the door (which it never did).

After the court finished questioning the venire, Tosca again moved the court to rule that the factual details of his sex offense were admissible.  This time he argued that in answering the court's questions, some of the prospective jurors had referred to sex crimes involving minors, and from those references the jury might speculate that Tosca himself was a child molester.  The court denied that motion as it had the earlier one.

We review only for abuse of discretion a district court's evidentiary rulings. United States v. Todd, 108 F.3d 1329, 1331 (11th Cir. 1997).  But a district court's discretion does not "extend to the exclusion of crucial relevant evidence necessary to establish a valid defense." Id. at 1332 (quotation marks omitted).  When a defendant argues that the exclusion of evidence violated his constitutional rights,

we consider whether a constitutional right was violated and, if so, whether the error was harmless beyond a reasonable doubt. United States v. Hurn, 368 F.3d 1359, 1362–63 (11th Cir. 2004); see also United States v. Pon, 963 F.3d 1207, 1227–28, 1238 (11th Cir. 2020).

Even if the court did err by excluding the facts of Tosca's sex offense, the error was harmless. The thrust of Tosca's argument is that, if the jury had known that he is not a convicted child molester, they would have been less likely to find that he knowingly failed to register as a sex offender. The insurmountable problem for Tosca's argument is that the jury *did* know he is not a convicted child molester. A witness from the Massachusetts Sex Offender Registry Board testified on cross-examination that Tosca "did not commit a crime against a child." There was no dispute about that. The same witness also testified that Tosca "did not commit a violent crime." So, the jury knew, as Tosca wanted it to know, that he was not convicted of sexually abusing a child and that the crime did not involve violence. As for other details of Tosca's sex offense, such as the race of his victim and how long he had known her, we seriously doubt that excluding that information was error, but even if it was, doing so was harmless beyond a reasonable doubt in light of all the other evidence of Tosca's guilt, which we will summarize in the next section. See Pon, 963 F.3d at 1238.

III.

Tosca also contends that the evidence at trial was insufficient to support his conviction.  We review de novo a preserved challenge to the sufficiency of the evidence, viewing the evidence in the light most favorable to the government and drawing all reasonable inferences and credibility choices in favor of the verdict.  United States v. Wilson, 788 F.3d 1298, 1308 (11th Cir. 2015).  We will affirm the verdict "if any reasonable construction of the evidence would have allowed the jury to find the defendant guilty beyond a reasonable doubt."  Id. (quotation marks omitted).  The evidence need not "exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt" but need only show, "after viewing the evidence in the light most favorable to the prosecution, [that] any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  United States v. Hernandez, 433 F.3d 1328, 1335 (11th Cir. 2005) (quotation marks omitted).

To sustain a SORNA conviction, the government must have proven that the defendant (1) was required to register under SORNA; (2) travelled in interstate commerce; and (3) knowingly failed to register and keep his registration current as required by SORNA.  18 U.S.C. § 2250(a); United States v. Beasley, 636 F.3d 1327, 1329 (11th Cir. 2011).  The government and Tosca stipulated that Tosca was required by SORNA to register in Florida and that he had travelled in interstate

11

commerce to get to that state, meaning the only element at issue is whether he knowingly failed to register.

When it comes to the "knowingly" element, the government need not prove that a defendant knew that he was violating SORNA; instead, it must prove "only that he 'knowingly' violated a legal registration requirement upon relocating." United States v. Griffey, 589 F.3d 1363, 1367 (11th Cir. 2009). "'Knowingly' means that an act was done voluntarily and intentionally and not because of a mistake or by accident." United States v. Mosquera, 886 F.3d 1032, 1051 (11th Cir. 2018). "[G]uilty knowledge can rarely be established directly, and . . . a jury may infer knowledge and criminal intent from circumstantial evidence alone." United States v. Duenas, 891 F.3d 1330, 1334 (11th Cir. 2018).

The jury also may infer guilt based on the defendant's own testimony because "a statement by a defendant, if disbelieved by the jury, may be considered as substantive evidence of the defendant's guilt." United States v. Brown, 53 F.3d 312, 314–15 (11th Cir. 1995). "At least where some corroborative evidence of guilt exists for the charged offense . . . and the defendant takes the stand in his own defense, the defendant's testimony, denying guilt, may establish, by itself, elements of the offense." Id. That "rule applies with special force where the elements to be proved for a conviction include . . . the defendant's intent or knowledge." Id. at 315. "[W]holly incredible explanations may also form a

12

sufficient basis to allow the jury to find that the defendant had the requisite guilty knowledge." United States v. Eley, 723 F.2d 1522, 1525 (11th Cir. 1984).

Tosca's argument, as put before the jury in his testimony, is that he thought he did not have to register in Florida for two reasons. First, the probation period that was part of his sentence had ended in February 2015, roughly a year and a half before he moved to Florida in late 2016, and he thought his duty to register had ended with it. Second, his attorney, Ashley Green, told him he did not have to keep registering after a December 2015 Massachusetts Supreme Judicial Court decision changed his classification level from a Level Two to "preliminary." There is, he argues, no evidence that anybody ever told him he had to continue registering for 20 years, or for any time after his probation ended in 2015, or in 2019 before he was arrested.

The jury quite reasonably could have rejected, and did reject, Tosca's claim that it was all just a misunderstanding on his part. The evidence showed that Tosca had repeatedly registered as a sex offender in Massachusetts, reporting a variety of address changes, and he had signed documents stating that he understood his obligations, *including his obligations to register in any new state he moved to*. That evidence strongly supports an inference that he knew he was required to notify Florida of his sex offender status when he moved there.

13

As for Tosca's knowledge of how long the registration requirement would apply to him, a witness from the Massachusetts Sex Offender Registry Board testified that one of the most frequently asked questions by registrants is how long they have to register. Even if there was no confirmation that Tosca ever asked that question, the jury could reasonably have inferred that he had asked it and that he had been told the duration was 20 years. There was no evidence that the Board or any government official ever told him, at any point, in any way, that he could stop registering. Tosca also told law enforcement when he was arrested in 2019 that he did not like being branded as a sex offender. And having observed Tosca's demeanor when he denied knowing his obligation to register in Florida, the jurors could have disbelieved his testimony and concluded that the opposite was true. See Brown, 53 F.3d at 314–15. There was plenty of evidence to corroborate what Tosca's demeanor indicated to them.

Tosca argues that there is no evidence that he was ever told that he had to keep registering after his probation period ended in February of 2015. That is not true. In June 2015 police officers did a spot check at his residence to confirm that he lived there. One of the officers who did that spot check testified that he spoke to Tosca that day and, during these checks, he always told the offender that he was there because of their sex offender status. The jury could reasonably have believed that testimony and inferred that the officer told Tosca he was still a registered sex

offender. And the jury could have reasonably inferred that, from that interaction, Tosca knew that his duty to register had not ended when his probation period did months earlier.

Not only that, but in October 2015, the Massachusetts Board mailed Tosca a letter telling him he needed to register for the following year and that he had to do so within five days. Tosca admitted during his testimony that at that time he still lived at the address in Massachusetts where the letter was sent, and the Board had no record of the letter having been returned as undelivered. Yet Tosca did not register. The jury could reasonably have concluded that Tosca received that letter, which was mailed to him eight months after his probation period ended, but he moved out of state and knowingly failed to register.

Tosca did testify that he believed he no longer had to register, but the jury could reasonably have discredited that testimony for numerous reasons and, having observed his demeanor while testifying, it was entitled to do so. Tosca claimed he had received a letter from his attorney, "Ashley Green," and that the letter told him he was no longer required to register because of his new classification level under Massachusetts law. But Tosca did not present any corroborating evidence. He was unable to produce the letter, even though he testified that it was important to him and even though common sense suggests he would have held onto a document that he believed evidenced his release from a legal obligation that carries potential

15

criminal penalties.  See United States v. Gomez-Castro, 605 F.3d 1245, 1249 (11th Cir. 2010) ("[A] trier of fact can rely on common sense.").  In addition to Tosca not having a copy of the letter, the Massachusetts Board had no record of the letter in its files.  Tosca also testified that attorney Green sent a cease and desist letter to the Board.  But again, he could not produce it and the Board had no record of it.  Nor did Tosca produce Green, whom he did not call as a witness.  In fact, the Board had no record of Green being Tosca's attorney at all; instead, his attorney of record was James Hanley.

Nor did the Board have any record of Tosca ever having been informed by anyone that his classification level had changed from Level Two to "preliminary," much less that he was somehow relieved from his duty to register because of the alleged change.  Quite the opposite was true.  A witness from the Board testified that any change to Tosca's classification level would have made no difference to his registration obligations.  The jury could reasonably have believed that Tosca's story about attorney Green was a concocted one.

In short, Tosca produced nothing to corroborate his testimony.  And substantial evidence undermined it.  The evidence supported a reasonable inference that Tosca knowingly violated SORNA after he moved to Florida, and that he lied when he testified that he did not know of his obligation to register there as a sex offender.  And that lie, in turn, was further substantive evidence from which the

16

jury could reasonably have concluded that Tosca had knowingly violated SORNA.

See Brown, 53 F.3d at 314–15.  The evidence was sufficient.

**AFFIRMED.**