[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 21-14446

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

CHYKEETRA MALTBIA, M.D.,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Alabama
D.C. Docket No. 1:19-cr-00209-JB-MU-1

_____

Before NEWSOM, BRANCH, and GRANT, Circuit Judges.

PER CURIAM:

Dr. Chykeetra Shinnyette Maltbia appeals her convictions for possession with intent to distribute controlled substances. She asserts that the district court erred for three reasons. First, she argues that the district court's exclusion of "good patient care" evidence deprived her of the right to present a complete defense in violation of the Fifth and Sixth Amendments. Second, she argues that the district court erred by not giving the jury a "good faith" instruction. Third, she contends for the first time on appeal that the district court should have instructed the jury that the government is required to prove that Maltbia issued prescriptions without a legitimate medical purpose *and* was acting outside the usual course of medical practice.

Because Maltbia is not entitled to relief on any of her claims, we affirm her convictions. We address each enumeration of error in turn.

## I.    Background

In February 2020, a grand jury indicted Maltbia with one count of conspiracy to possess with intent to distribute controlled substances in violation of 21 U.S.C. § 846 (Count One); sixteen counts of possession with intent to distribute controlled substances in violation of 21 U.S.C. § 841(a)(1) (Counts Two through Seventeen); and eighteen counts of healthcare fraud in violation of

18 U.S.C. § 1347 (Counts Eighteen through Thirty-Five).[1] Maltbia pleaded not guilty on all counts, and the district court set the case for trial. Before trial, the government moved to dismiss the healthcare fraud claims, and the court granted the motion.

Maltbia is a physician who owned and operated a medical clinic in Mobile, Alabama. At trial, a special agent with the United States Drug Enforcement Administration ("DEA") testified that he became familiar with Maltbia's clinic through an investigation into several individuals for selling "oxycodone 30" prescription pills.[2] He discovered that the individuals selling oxycodone 30 were Maltbia's patients and observed them at Maltbia's clinic. After searching Maltbia's clinic and the electronic data stored on her computers pursuant to a search warrant, he learned that Maltbia regularly prescribed controlled substances to her patients— including oxycodone 30. Further investigation revealed that Maltbia had already signed prescriptions for patients that she was scheduled to see later in the day; that Maltbia charged her patients $300 per visit; that Maltbia's patients "mainly" paid in cash or by credit card; and that Maltbia had issued prescriptions to patients while she was out-of-state on multiple occasions. A DEA

---

[1] In August 2019, a grand jury indicted Maltbia with five violations of 21 U.S.C. § 841(a)(1). Later that fall, Maltbia pleaded not guilty on all counts. A grand jury then returned a superseding indictment in February 2020.

[2] Testimony at trial explained that oxycodone 30 refers to the dosage of oxycodone (30 milligrams) and that oxycodone 30 has the "highest street value" for oxycodone.

intelligence analyst testified that 58.7% of Maltbia's patients received at least one prescription of oxycodone 30. And the government's expert witness concluded that Maltbia prescribed opioids without properly assessing patients and that she falsified medical records.

The jury found Maltbia guilty on Count Two and Counts Four through Seventeen.[3] After denying Maltbia's motion for new trial, the district court sentenced her to five years' probation for each count, with each probationary term to run concurrently, and ordered Maltbia to pay a $50,000.00 fine.

Maltbia timely appealed.

## II.    Discussion

### a.    *Whether the district court erred by excluding "favorable patient testimony"*

First, Maltbia argues that the district court denied her the right to present a complete defense in violation of the Fifth and Sixth Amendments to the Constitution by excluding "favorable patient testimony." We disagree.

Prior to trial, the government filed a motion *in limine* to exclude testimony from Maltbia's "good patient[s]" during opening statements or "during trial without first making an argument

---

[3] Maltbia moved for acquittal during trial and at the close of evidence, and the district court granted her motions in part and dismissed Counts One and Three.

outside the jury's presence." The government explained that a common "defense tactic in trials where the defendant is a medical professional is for the defendant to attempt to call 'good patient' witnesses—*i.e.*, patients who will testify that they received proper medical care from the defendant." The government argued that "[w]hile such testimony might appear to be relevant at first blush, 'good patient' testimony is actually impermissible character evidence."

Maltbia opposed the motion, arguing that excluding evidence of good patient care would deprive her of a fair trial and her right to present a full defense under the Fifth and Sixth Amendments.

After a hearing, the district court granted the government's motion and stated that "[a]ny request for the [c]ourt to revisit the issue of admissibility at trial shall occur outside the presence of the jury."

"Whether the exclusion of evidence violated a constitutional guarantee is a legal question reviewed *de novo*." *United States v. Sarras*, 575 F.3d 1191, 1209 n.24 (11th Cir. 2009). And "[i]n assessing a defendant's claims under the Fifth and Sixth Amendments to call witnesses in her defense, . . . [w]e first examine whether [the] right was actually violated, [and] then turn to whether [the] error was harmless." *United States v. Hurn*, 368 F.3d 1359, 1362–63 (11th Cir. 2004) (quotation omitted).

"The Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." *United States v. Akwuba*, 7 F.4th 1299, 1312 (11th Cir. 2021) (quotation omitted). But the right to present a complete defense is not absolute; rather, it is subject to reasonable restrictions. *Id.* "[S]tate and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials." *United States v. Mitrovic*, 890 F.3d 1217, 1221 (11th Cir. 2018) (quoting *United States v. Scheffer*, 523 U.S. 303, 308 (1998)). "Such rules do not abridge an accused's right to present a defense so long as they are not 'arbitrary' or 'disproportionate to the purposes they are designed to serve.'" *Id.* (quoting *Scheffer*, 523 U.S. at 308). A trial judge's role as gatekeeper is to "ensure that the factfinder bases its decision only on relevant and reliable information." *Id.* at 1222. Thus, "while a criminal defendant must be given every meaningful opportunity to present a complete defense," "[s]he must [also] comply with the procedural and evidentiary rules designed to facilitate a search for the truth" in doing so. *Id.* (quotation omitted). And, notably, the Supreme Court "has never held that a federal rule of evidence violated a defendant's right to present a complete defense." *Id.* (emphasis omitted).

On appeal, Maltbia contends that the district court's exclusion of testimony related to "good patient care" violated the Fifth and Sixth Amendments by depriving her of the ability to present a complete defense. She relies on *United States v. Hurn*, 368 F.3d 1359 (11th Cir. 2004), to support her argument that "good

21-14446          Opinion of the Court          7

patient testimony" had "the potential to 'place the story presented by the [g]overnment in a significantly different light.'"

In *Hurn*, we explained that a district court's exclusion of evidence may violate the Constitution in four circumstances. 368 F.3d at 1363. As relevant here, we stated that "a defendant must generally be permitted to introduce evidence that, while not directly or indirectly relevant to any of the elements of the charged events, nevertheless tends to place the story presented by the prosecution in a significantly different light, such that a reasonable jury might receive it differently."[4] *Id.* Thus, *Hurn* recognizes that defendants have a right to combat "the government's selective presentation of entirely truthful evidence" that can "cast a defendant in an inaccurate, unfavorable light, or make entirely legitimate, normal, or accepted acts appear unusual or suspicious."

---

[4] Although not relevant to this appeal, the other three circumstances include:

> First, a defendant must generally be permitted to introduce evidence directly pertaining to any of the actual elements of the charged offense or an affirmative defense. Second, a defendant must generally be permitted to introduce evidence pertaining to collateral matters that, through a reasonable chain of inferences, could make the existence of one or more of the elements of the charged offense or an affirmative defense more or less certain. Third, a defendant generally has the right to introduce evidence that is not itself tied to any of the elements of a crime or affirmative defense, but that could have a substantial impact on the credibility of an important government witness.

*Hurn*, 368 F.3d at 1363.

*Id.* at 1366–67. "In these situations, the defendant has the right to introduce additional evidence to dispel this unjustified taint, even if that evidence does not directly or indirectly bear on a particular element of an offense." *Id.* at 1367.

For example, in *United States v. Todd*, 108 F.3d 1329, 1329 (11th Cir. 1997), the defendant was convicted of embezzling from his company's employee retirement fund. To prove "criminal intent" and show that the defendant was "motivated by greed and selfishness to fraudulently deprive the employees of the [p]lan's funds," the government presented evidence that the defendant and his family members who worked at the company received large salaries. *Id.* at 1332–33. We reversed the defendant's conviction, concluding that the district court erred by prohibiting the defendant from introducing evidence that all employees who worked at the company, not just his family members, received large salaries and benefits. *Id.* at 1333–34. We reasoned that such evidence "could have put quite a different spin on the question of Todd's intent and actions" and that "[b]y disallowing the disputed evidence, the district court deprived [the defendant] of a chance to rebut the government's intent argument." *Id.*

Here, Maltbia fails to establish that evidence of good patient care constitutes the type of evidence contemplated by *Hurn* and *Todd*—*i.e.*, evidence that "complete[s] the picture" of the charged crimes. *Hurn*, 368 F.3d at 1366–67. Maltbia argues that "[t]estimony of good patient care whose quality of life has improved after being treated by Maltbia was essential to refuting

the [g]overnment's claim that Maltbia was analogous to a street drug dealer[,] that she was only seeming to make her practice legitimate, and [that] she was not an honest and diligent doctor."[5] But even if evidence of good patient care might have added some additional context, it would not have given the jury a reason in law not to convict. *See United States v. Funches*, 135 F.3d 1405, 1408 (11th Cir. 1998) (affirming a conviction even though some contextual evidence was excluded because "[h]ad the jury heard [the excluded evidence], the jury nonetheless would have lacked a reason in law not to convict"). Indeed, "evidence introduced to 'complete' a potentially misleading story offered by the government is pertinent only when it might color a jury's assessment of the material facts of the case." *Hurn*, 368 F.3d at 1367. Here, Maltbia does not explain how evidence of good care for some patients would change or otherwise affect the material facts that led to her convictions. Accordingly, because "good patient" evidence was not necessary to correct inaccuracies created by the government's evidence or "complete the picture" of the charged crimes, we conclude that the district court's exclusion of

---

[5] In its opening statement at trial, the government stated: (1) that "[t]he only difference in Maltbia and a street level drug dealer is that she used her medical license to do it" and (2) that "Maltbia and [her stepfather] worked together to make it seem like a legitimate clinic. But you will be able to tell from the undercover videos that it was anything but." Then in its closing argument, the government asserted that "[w]e would not be here today if Maltbia had been a diligent and honest doctor."

"good patient" evidence did not violate Maltbia's constitutional right to present a complete defense.

> b. *Whether the district court erred by not giving the jury a good faith instruction*

Next, Maltbia argues that the district court erred by not giving the jury a good faith defense charge. After reviewing for plain error, we conclude that Maltbia fails to carry her burden.

When instructing the jury at the close of trial, the district court explained that under 21 U.S.C. § 841(a)(1) of the Controlled Substances Act ("CSA"), "[f]or a controlled substance to be lawfully distributed or dispensed by prescription, the prescription must have been issued by a practitioner both for a legitimate medical purpose and within the usual course of professional practice." The district court explained that this determination was to be made using an objective—not subjective—standard:

> Whether a prescription was issued in the usual course of professional practice must be evaluated based on an objective standard. Thus, you must not focus on the subjective intent of the prescriber. Rather, your focus must be on whether the controlled substance identified in each count was prescribed by [Maltbia] in accordance with an objective standard of medical practice generally recognized and accepted in the United States.

21-14446                Opinion of the Court                11

Maltbia never objected to the instruction.[6]

Months later, Maltbia filed an untimely motion for new trial, explaining that the Supreme Court had granted a petition for a writ of certiorari in *Ruan v. United States*, -- U.S. --, 142 S. Ct. 457 (2021) ("*Ruan II*"), and a consolidated case and that the issues in those cases were "directly applicable" to the legal issues of her case. She contended that the petitions for certiorari addressed "the issue of 'good faith' as a defense to allegations of the nature contained in the indictment against [Maltbia]." Maltbia urged the district court to accept her out-of-time motion and to delay ruling on the motion and conducting sentencing until the Supreme Court decided *Ruan II*. The government opposed her motion, arguing that the motion was untimely, that Maltbia was making these arguments for the first time, and that "a delayed motion for a new trial should not be a substitute for timely objections during trial." The district court denied Maltbia's motion, and Maltbia appealed.

Because Maltbia did not timely file her motion for new trial, we review the district court's denial of the motion for plain error.

---

[6] Although the parties and the district court discussed a good faith instruction at the charge conference, the district court ultimately did not give a good faith instruction to the jury—stating that it had "to follow the [then-binding] Eleventh Circuit's law on [the issue]," which required that the "usual course of professional practice" prong be evaluated under an objective standard. Maltbia never requested a good faith instruction at the charge conference and never objected to the district court's conclusion that it was not "an appropriate defense to be instructed to the jury."

*See United States v. Little*, 864 F.3d 1283, 1289 (11th Cir. 2017). Under plain error review, "[w]e may reverse an error that was plain and that affects [a] defendant's substantial rights, provided it also seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Innocent*, 977 F.3d 1077, 1081 (11th Cir. 2020). Importantly, "[t]he party challenging the error bears the burden of proving that [she] had a 'reasonable probability of a different result' absent the error." *Id.* (quoting *Dell v. United States*, 710 F.3d 1267, 1276 (11th Cir. 2013)).

After Maltbia appealed to us, the Supreme Court decided *Ruan II.* A bit of background is helpful.

The statute under which Maltbia was convicted—21 U.S.C. § 841(a)—prohibits the "knowing[] or intentional[]" dispensing of controlled substances "[e]xcept as authorized." Certain controlled substances are "authorized" to be dispensed by prescription if the prescription is made for a "legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice." 21 C.F.R. § 1306.04(a). Prior to the Supreme Court's decision in *Ruan II*, we had repeatedly rejected defendants' requests for a good faith jury instruction—specifically, an instruction that a defendant's good faith could be a defense to an allegation that she acted outside the "usual course of professional practice." *See United States v. Ruan*, No. 17-12653, 2023 WL 106451, at *1 (11th Cir. Jan. 5, 2023) ("*Ruan III*") (citing cases). In those cases, we held that the "usual course of professional practice"

prong must be evaluated using an objective standard, not a subjective one.  *Id.*

The Supreme Court reversed.  *Ruan II*, 142 S. Ct. at 2376. Rejecting our objective standard, the Supreme Court held that § 841(a)'s "knowingly or intentionally" mens rea requirement applies to both the dispensing element *and* to the "except as authorized" clause.  *Id.*; *Ruan III*, 2023 WL 106451, at *2.  The Supreme Court's holding means that, to obtain a conviction under § 841(a), the "government must prove beyond a reasonable doubt that a defendant (1) knowingly or intentionally dispensed a controlled substance; and (2) knowingly or intentionally did so in an unauthorized manner."  *Ruan III*, 2023 WL 106451, at *2; *see also Ruan II*, 142 S. Ct. at 2376.  The Supreme Court explained that an objective standard inappropriately imported a civil negligence standard into a criminal prosecution.  *Ruan III*, 2023 WL 106451, at *2.  "Instead, what matters is the defendant's subjective mens rea."  *Id.*

On remand, we held that the district court's denial of the defendants' request for a good faith instruction, which reflected a subjective intent, was error.  *Id.*  And because "the district court's instruction for the substantive drug charges inadequately conveyed the required mens rea to authorize conviction under § 841(a)," we vacated the defendants' substantive drug convictions under § 841(a).  *Id.* at *3.

Turning back to the case at hand, we conclude that Maltbia cannot meet her burden to establish each element of plain error.

Even if Maltbia could meet the first two prongs of the test, she cannot satisfy the third prong.[7]   Namely, she cannot satisfy her burden to prove that there is a reasonable probability that she would have obtained a different result but for the error.  *Innocent*, 977 F.3d at 1082.

As the party challenging the alleged error, Maltbia bears the burden of persuasion.  *See United States v. Monroe*, 353 F.3d 1346, 1352 (11th Cir. 2003) (explaining that plain error review, unlike harmless error review, puts "the burden of persuasion with respect to prejudice or the effect on substantial rights" on the defendant, not the government).  And the "burden of showing prejudice to meet the third-prong requirement is anything but easy."  *United States v. Rodriguez*, 398 F.3d 1291, 1299 (11th Cir. 2005).  She must prove that she had a "reasonable probability of a different result" absent the error.  *Innocent*, 977 F.3d at 1082; *United States v. Reed*, 941 F.3d 1018, 1021 (11th Cir. 2019) (explaining that a defendant

---

[7] Even though Maltbia fails on the third prong of the plain error test, we note that she could have potentially succeeded on the first two.  Although we do not have any language for a good faith instruction to evaluate because none was proposed in this case, we do know that the jury instruction given was erroneous because it used an objective standard, rather than the subjective standard that is now required. *See Ruan II*, 142 S. Ct. at 2376.  And "[t]he error was plain because it is evident at the time of appellate review." *Innocent*, 977 F.3d at 1082; *see Henderson v. United States*, 568 U.S. 266, 279 (2013) (explaining that "whether a legal question was settled or unsettled at the time of trial," the second prong of the plain error test is satisfied if an error is plain "at the time of appellate consideration" (quotation omitted)).

21-14446               Opinion of the Court                    15

"must prove that an error occurred that was both plain and that affected [her] substantial rights").

In the face of this burden, Maltbia makes no argument and presents no evidence that she was prejudiced by the error.[8]  *See Monroe*, 353 F.3d at 1352; *see also United States v. Duncan*, 400 F.3d 1297, 1304 (11th Cir. 2005) (concluding that the defendant could not meet his burden of persuasion when he "[did] not point to anything indicating a reasonable probability of a different result" (quotation omitted)).  And we decline to construct a prejudice argument for Maltbia from a blank slate.  Accordingly, we conclude that Maltbia fails to meet her burden and cannot survive plain error review when she provides no showing of prejudice and makes no attempt to argue that a different result would have occurred absent the error.  *See Duncan*, 400 at 1304 (explaining that the defendant bears the burden of "persuasion with respect to prejudice").

    c.   *Whether the district court erred by giving a disjunctive jury instruction*

At the close of trial, the district court instructed the jury that the government must prove that "the defendant knowingly and intentionally dispensed or distributed or caused to be dispensed or distributed a controlled substance by prescription and [(1)] the prescription was issued not for a legitimate medical purpose *or* [(2)]

---

[8] Indeed, Maltbia's brief does not reference "plain error," "prejudice," or "substantial rights."  Instead, she largely summarizes the state of the law pre-*Ruan II* and "urges [this] Court to be mindful of the *Ruan* ruling."

the prescription was issued outside the usual course of professional practice." For the first time on appeal, Maltbia argues that the district court erred by not charging the "legitimate medical purpose" and "usual course" "requirements in the conjunctive." After reviewing for plain error, we conclude that Maltbia fails to carry her burden.

Because Maltbia raises this jury instruction issue for the first time on appeal, we review her claim for plain error. *United States v. Guevara*, 894 F.3d 1301, 1309 (11th Cir. 2018). Under plain error review, we may exercise our discretion and correct an unpreserved error where there is (1) an error; (2) the error is plain; (3) the error affects substantial rights; and (4) the error seriously affects the fairness or integrity of the judicial proceedings. *Id.* Maltbia's argument fails on all fronts.

As we explained above, under 21 U.S.C. § 841(a)(1) of the CSA, it is unlawful for a person to knowingly or intentionally distribute or dispense a controlled substance except as authorized. One authorized exception permits licensed doctors to dispense certain controlled substances with prescriptions. 21 U.S.C. § 829(a), (b). The regulations explain that for such a prescription to be effective, it "must be issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice." 21 C.F.R. § 1306.04(a). And we have interpreted this regulation to be disjunctive, meaning that a doctor unlawfully distributes a controlled substance by prescription if (1) "the prescription was not for a legitimate medical purpose" *or* (2)

"the prescription was not made in the usual course of professional practice." *United States v. Abovyan*, 988 F.3d 1288, 1305 (11th Cir. 2021) (quotations omitted) (explaining that "[t]he rule is disjunctive, and a doctor violates the law if he falls short of either requirement").    Indeed, we have repeatedly affirmed jury instructions that were given in this disjunctive format. *See, e.g., id.* at 1305, 1308; *United States v. Joseph*, 709 F.3d 1082, 1094–96 (11th Cir. 2013), *abrogated on other grounds by Ruan III*, 2023 WL 106451, at *1; *United States v. Tobin*, 676 F.3d 1264, 1282–83 (11th Cir. 2012), *abrogated on other grounds by Ruan III*, 2023 WL 106451, at *1.    Thus, considering that we have affirmed this jury instruction in the past, and that the Supreme Court did not address it in *Ruan II*, we conclude that no plain error exists.[9]    *See United States v. Sanchez*, 940 F.3d 526, 537 (11th Cir. 2019) ("An error cannot be plain unless the issue has been specifically and directly resolved by the explicit language of a statute or rule or on point precedent from the Supreme Court or this Court.").

---

[9] We note that our conclusion is limited to the plain error review context. We do not address what impact *Ruan II* may have on this issue, if any, if it is preserved and raised on appeal in a future case.

Additionally, Maltbia argues, in a conclusory manner, that "[t]he phrase 'usual course of professional practice,' when separated from 'medical purpose,' is unconstitutionally vague." Again, Maltbia did not raise this issue below, so it is subject to plain error review. And where we have repeatedly affirmed this disjunctive jury instruction, we cannot say that it was plain error for the district court to give such an instruction. *See United States v. Sanchez*, 940 F.3d 526, 537 (11th Cir. 2019).

Additionally, Maltbia cannot establish the third prong of the plain error test because she fails to argue how she was prejudiced and because she has not demonstrated that the outcome would have been different if a conjunctive instruction, rather than a disjunctive instruction, was given.  The government urges us not to "create a prejudice argument from whole cloth" when Maltbia "does not . . . engage [the] heavy burden [of proving she received an unfair trial] on appeal," and we will not do so.  Considering that Maltbia bears the difficult burden of persuasion on this point, *see Rodriguez*, 398 F.3d at 1299, we conclude that she cannot survive plain error review when she makes no argument on this prong, *see Duncan*, 400 F.3d at 1304.

### III.　　Conclusion

Because Maltbia is not entitled to relief on any of her claims, we affirm her convictions and the district court's denial of her motion for new trial.

**AFFIRMED.**